PEOPLE v DUENAZ

Docket No. 311441. Submitted May 13, 2014, at Detroit. Decided July 10,
   2014, at 9:00 a.m. Leave to appeal sought.

A jury in the St. Clair Circuit Court, James P. Adair, J., convicted Robin
   S. Duenaz of three counts of first-degree criminal sexual conduct
   (CSC-I) (victim under 13 years of age), MCL 750.520b(1)(a), and one
   count of second-degree criminal sexual conduct (CSC-II) (victim
   under 13 years of age), MCL·750.520c(1)(a). The court sentenced
   defendant as a fourth-offense habitual offender, MCL 769.12, to 50 to
   75 years in prison. Defendant appealed.

     The Court of Appeals *held*:

     1. Under MCL 750.520j, evidence of all sexual activity by the
   complainant not incident to the alleged rape is barred, with two
   narrow exceptions. In this case, defendant sought to admit evi-
   dence that the victim's then stepfather had sexually assaulted her
   approximately one year before the charged offenses occurred. The
   evidence of the prior sexual assault did not fit within either of the
   narrow exceptions set forth in MCL 750.520j, and admission of the
   evidence was not necessary to preserve defendant's constitutional
   right of confrontation. The trial court did not abuse its discretion
   by excluding the evidence.

     2. Under MRE 803(4), hearsay statements are not excluded by
   the general rule barring the admission of hearsay when the
   statements were made for the purpose of medical treatment or
   diagnosis in connection with treatment and describing medical
   history, or past or present symptoms, pain, or sensations, or the
   inception or general character of the cause or external source
   thereof insofar as reasonably necessary to such diagnosis or
   treatment. In cases of suspected child abuse, statements the child
   makes may be admitted under this exception when the totality of
   the circumstances surrounding the statements indicates that they
   are trustworthy. In this case, the court admitted statements the
   victim made to Dr. Harry Frederick that implicated defendant.
   The victim here was mature enough to relate the details to the
   doctor and others, the physician did not use leading questions to
   elicit the statements, the victim phrased her statements in child-

like terms, the examination was performed while the victim was still suffering emotional pain and distress from the incident, and the victim's identification of the defendant was reasonably necessary to the victim's diagnosis and treatment given that defendant was a family friend. In light of these facts, the court did not abuse its discretion by admitting the statements the victim made to Frederick.

3. Under MCL 768.27a, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. But although admissible under MCL 768.27a, evidence may be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. When applying MCL 768.27a and the balancing test of MRE 403, the propensity inference of the evidence must be weighed in favor of the probative value of the evidence. In this case, the court did not abuse its discretion by admitting evidence of defendant's 2009 Arizona conviction for attempted molestation of a child and testimony by defendant's former stepdaughter that he sexually assaulted her. The trial court correctly found that defendant's assault on his then stepdaughter was similar to the acts alleged in this case: both involved similar acts in the same location, with similar threats to the victims, and less than six months elapsed between the two crimes. This evidence was relevant and probative. Further, the acts alleged in this case were of the same general character as those supporting defendant's Arizona conviction because both involved sex crimes against children. While the Arizona conviction was prejudicial, it was not unfairly prejudicial.

4. Under MCL 767.40a, if requested by the defense, the prosecution or law enforcement must provide reasonable assistance to locate and serve process on witnesses. MCL 767.93(1) allows the court to issue a certificate to obtain the presence of an out-of-state material witness. In this case, defendant moved to compel the testimony of Dr. Duane Penshorn, who had examined the victim shortly after the allegations against defendant came to light. Defendant proposed to have Penshorn testify by telephone, but the court ruled that MCR 6.006 would not permit telephonic testimony because the court did not have two-way interactive video technology. In light of the court's ruling, the parties stipulated the admission of Penshorn's report. Assuming that the prosecution

was not duly diligent in producing Penshorn and that the court abused its discretion by not permitting Penshorn to testify by telephone, defendant failed to establish prejudice. Defendant made no argument regarding how questioning Penshorn in court or over the phone would have provided any more information to the jury than was already provided in his report. Error in the admission or exclusion of evidence does not warrant reversal if, in light of the other properly admitted evidence, it does not affirmatively appear more probable than not that a different outcome would have resulted without the error.

5. The Double Jeopardy Clause, US Const, Am V, protects against multiple prosecutions for the same offense after acquittal or conviction and against multiple punishments for the same conviction. When the Legislature has clearly expressed the intent for multiple punishments, the prohibition against double jeopardy is not violated by the imposition of multiple punishments. When that intent is not clearly expressed, the "same elements" test of *Blockburger v United States*, 284 US 299, 304 (1932), must be applied. The *Blockburger* test looks at the statutory elements of the offenses and asks whether each offense requires proof of a fact that the other does not. The elements of CSC-I in this case were (1) the defendant engaged in sexual penetration, (2) with a person under 13 years of age. Under MCL 750.520a(r), "sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight of any part of a person's body or any object into the genital or anal openings of another person's body. The elements of CSC-II were (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age. The statutory definition, under MCL 750.520a(q), of "sexual contact," includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that touching can reasonably be construed as being for the purpose of sexual arousal or gratification, or done for a sexual purpose. Given the Legislature's definitions of "sexual penetration" and "sexual contact," CSC-I and CSC-II each require proof of a fact that the other does not. Sexual penetration is an element of CSC-I but not CSC-II. CSC-II requires that sexual contact be done for a sexual purpose, an element not included in CSC-I. Under *Blockburger*, conviction and punishment for both CSC-I and CSC-II does not violate double jeopardy.

6. Under the Interstate Agreement on Detainers (IAD), MCL 780.601, an inmate incarcerated in one state may be transported to another state for trial on charges in the receiving state. Under

Article III(a) of the IAD, whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after he or she shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. In this case, defendant's demand for disposition, accompanied by the required certificate, was not delivered to the prosecution until December 28, 2011, and defendant was properly brought to trial within 180 days after that date.

7. Offense Variable (OV) 11, MCL 777.41, concerns criminal sexual penetration. Defendant was assessed 50 points for OV 11, but the prosecution agreed that defendant should have been assessed only 25 points because there was only one additional penetration beyond the sentencing offenses. Correction of the error reduced the recommended minimum-sentence range. Accordingly, defendant was entitled to resentencing because a defendant is entitled to be sentenced on the basis of accurate information.

Defendant's convictions affirmed; case remanded for correction of the sentencing information report and resentencing.

CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENTS — CRIMINAL SEXUAL CONDUCT.

The crimes of first-degree criminal sexual conduct for sexual penetration with a person under 13 years of age and second-degree criminal sexual conduct for sexual contact with a person under 13 years of age each contain an element that the other does not; the crimes are separate offenses for which a defendant may be

properly convicted and punished without violating the Double Jeopardy Clause protection against multiple punishments (US Const, Am V; Const 1963, art 1, § 15; MCL 750.520b(1)(a); MCL 750.520c(1)(a)).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Michael D. Wendling*, Prosecuting Attorney, and *Hilary B. Georgia*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Michael L. Mittlestat* and *Malaika Ramsey-Heath*) for defendant.

Before: MARKEY, P.J., and SAWYER and WILDER, JJ.

PER CURIAM. Defendant appeals by right his convictions by a jury of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 50 to 75 years in prison. We affirm defendant's convictions but remand for correction of the sentencing information report and resentencing.

## I. EVIDENCE OF PRIOR ASSAULT

Defendant first argues that the trial court abused its discretion by ruling inadmissible evidence regarding a sexual assault that the victim's then stepfather perpetrated on her about one year before the instant offenses. The stepfather had pleaded guilty to reduced charges of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d, and one count of CSC-II, and was sentenced to 10-15 years in prison. The trial court reviewed the police reports in the instant case and those from the earlier case and ruled that under the rape-

shield statute, MCL 750.520j, the defense could not inquire into the prior case involving the victim.

Defendant argues that the evidence was admissible under exceptions to the rape-shield statute for sources of disease and to show an alternate source of the victim's age-inappropriate sexual knowledge. He also contends that the probative value of this evidence outweighed any prejudicial effect. Further, defendant asserts the trial court's ruling denied him his constitutional the right to present a defense and confront his accusers. We disagree.

### A. STANDARD OF REVIEW

This Court reviews de novo both constitutional claims and preliminary questions of law regarding admissibility of evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010); *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). We review the trial court's ultimate decision regarding admissibility of evidence for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

### B. ANALYSIS

We conclude the proposed evidence was not relevant, MRE 401; therefore, it was not admissible, MRE 402. Moreover, the trial court did not abuse its discretion by excluding the evidence because any marginally probative value of the evidence was substantially outweighed by the danger of unfair prejudice or confusion of the issues. MRE 403; *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003). Finally, defendant's consti-

tutional rights to present a defense and confront the witnesses against him were not violated. *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982) (stating that the right to confront and cross-examine witnesses does not include a right to cross-examine regarding irrelevant issues).

The rape-shield statute, MCL 750.520j, provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

Similarly, MRE 404(a)(3) provides an exception to the general rule excluding character evidence for, in a case involving criminal sexual conduct (CSC), "evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease . . . ."

The rape-shield statute " 'bars, with two narrow exceptions, evidence of *all* sexual activity by the complainant not incident to the alleged rape.' " *People v Adair*, 452 Mich 473, 478; 550 NW2d 505 (1996), quoting *People v Stull*, 127 Mich App 14, 17; 338 NW2d 403 (1983). Because the statute excludes evidence that in most cases would be only minimally relevant, the statute's prohibitions do not deny or significantly di-

minish a defendant's right of confrontation. *Arenda*, 416 Mich at 11. Moreover, evidence of a complainant's sexual history also "is usually irrelevant as impeachment evidence because it has no bearing on character for truthfulness." *Adair*, 452 Mich at 481, citing MRE 608. This is especially so in this case, given that the evidence was not intended to show "bias, motive, or a pattern of false accusations . . . ." *Id.* at 481 n 5. Under the statutory language, if one of the exceptions in the statute applies, the trial court must determine whether the inflammatory or prejudicial nature of the evidence "outweigh[s]" its probative value. MCL 750.520j.[1]

The evidence defendant sought to admit concerning the victim's prior sexual experience did not fit within either of the narrow exceptions provided by the rape-shield statute. MCL 750.520j(1). The statute was enacted to prohibit inquiry into a victim's prior sexual encounters, which were historically used by defendants charged with CSC involving an adult in an effort to prove the defense of consent. The statute reflects a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant. *People v Hackett*, 421 Mich 338, 346; 365 NW2d 120 (1984). Although consent is not a relevant defense to a CSC charge involving an underage minor, Michigan courts have applied the rape-shield statute in cases involving child victims. See *Arenda*, 416 Mich at 6, 13; *Benton*, 294 Mich App at 197-199; *People v Morse*, 231 Mich App 424, 430; 586 NW2d 555 (1998); *People v Garvie*, 148 Mich App 444, 448-449; 384 NW2d 796 (1986).

---

[1] This is in contrast to MRE 403, which provides that relevant evidence may be excluded if its probative value is "substantially outweighed" by prejudicial considerations. *Adair*, 452 Mich at 481.

Although the proffered evidence does not fit within one of the rape-shield exceptions, in limited situations evidence the statute excludes may nevertheless be relevant and admissible to preserve a defendant's constitutional right of confrontation. *Hackett*, 421 Mich at 348–349; *Benton*, 294 Mich App at 197. Our Supreme Court has directed that trial courts inform the exercise of their discretion in regard to such a constitutional claim by conducting an in camera hearing. *Hacket*, 421 Mich at 349. In this case, defendant asserts that evidence of the prior assault was relevant and admissible as an alternative explanation for the victim's inappropriate sexual knowledge. The trial court reviewed police reports of the earlier offenses and heard arguments of counsel at a bench conference and on the record. As the prosecution notes, the only similarity between the two cases was that both involved anal and vaginal penetration. The two cases were certainly not "significantly similar." See *Morse*, 231 Mich App at 437. In addition, defendant's theory of relevance was just that. The victim was 12 years old when she testified in this case about what occurred when she was almost 8 years old. It is pure speculation to suggest (1) that the victim's knowledge of sexual matters was inappropriate and (2) that the victim's knowledge of sexual matters derived from an experience in her life a year before the instant offenses. So, the evidence is not at all probative of the victim's credibility. Its admission would have only created "a real danger of misleading the jury" and "an obvious invasion of the victim's privacy." *Arenda*, 416 Mich at 12. In sum, the record indicates that the trial court balanced the rights of the victim and defendant, as required by *Morse*, 231 Mich App at 433, and its ruling excluding the evidence was well within the range of principled outcomes, *Benton*, 294 Mich App at 195.

## II. HEARSAY

Defendant next argues that the trial court abused its discretion by admitting statements the victim made to Dr. Harry Frederick, a board-certified emergency physician and medical director of the Saginaw Child Advocacy Center. Frederick was qualified as an expert in emergency medicine and child sexual examinations. The instant offenses were alleged to have occurred between December 25, 2007, and January 1, 2008. Frederick examined the then eight-year-old victim on January 22, 2008. The victim made statements implicating defendant in the offenses while Frederick questioned her regarding her history. Defendant contends the statements were not necessary to medical diagnosis or treatment, and that the statements were not trustworthy. The prosecution disputes defendant's claims, and argues that if error occurred, it was harmless. We conclude that the trial court did not abuse its discretion by admitting the hearsay evidence.

### A. STANDARD OF REVIEW

We review the trial court's decision to admit evidence for an abuse of discretion. *Burns*, 494 Mich at 110. But we review de novo preliminary questions of law regarding whether a statute or evidentiary rule applies. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). The trial court's decision is an abuse of discretion when the result is outside the range of principled outcomes. *Benton*, 294 Mich App at 195.

### B. ANALYSIS

MRE 803(4) provides an exception to the general rule excluding hearsay for statements made for purposes of medical treatment or medical diagnosis in connection

with treatment: "Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis or treatment" are not excluded by the hearsay rule.

All exceptions to the hearsay rule are justified because of the belief that the statements are made under circumstances in which they are both necessary and inherently trustworthy. *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *Id.* In cases of suspected child abuse, statements the child makes may be admitted under this exception when the totality of circumstances surrounding the statements supports that they are trustworthy. *Id.* at 323-324. Factors that may be part of a trustworthiness analysis include:

(1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to

the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325 (citations omitted).]

Applying the *Meeboer* factors to the present case supports admission of the victim's statements under MRE 803(4). Unlike the *Meeboer* companion case of *People v Craft*, in which the victim was four, the victim in this case was nearly eight when the abuse occurred and eight when Frederick examined her. She was mature enough to relate the details to the doctor and others. Frederick did not use leading questions to elicit the statements. The victim also phrased her statements in childlike terms such as, "Scott put his pee-pee in her, um, butt and in her private part, and that . . . it hurt." Although the prosecution initiated the examination and it may have been at least in part to investigate an alleged sexual assault, this factor is not dispositive. See *Meeboer*, 439 Mich at 333-334. Furthermore, Frederick's examination of the victim was done when the child was still suffering from emotional pain and distress from the incident. The examination was medical, not psychological. Nothing indicates that the victim mistook defendant's identity or had a motive to fabricate.

As discussed in *Meeboer*, 439 Mich at 329-330, statements of identification in child sexual abuse cases serve several important purposes. The doctor can assess and treat any pregnancy or sexually transmitted disease, make referrals for other treatment, including counseling, and structure the examination to the "exact type of trauma the child recently experienced." *Id*. at 329. The doctor can also assess whether the child will be returning to an abusive home. In this case, the attacker's identity was important because he was a family friend who managed to take the child with him more than once. Generally, identification of the assailant "can be

as important to the health of the child as treatment of the physical injuries that are apparent to the physician." *Id.* at 328. In this case, the "identification of the assailant was reasonably necessary to the victim's medical diagnosis and treatment." *Id.* at 334. Indeed, the victim's identification of defendant was an inseparable part of the examination when she volunteered it as her first statement to Frederick.

Finally, even if admission of the identification testimony were error, it does not require reversal. Frederick's testimony regarding the victim's out-of-court statement was cumulative of her in-court identification of defendant. "[T]he admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence." *Gursky*, 486 Mich at 620. In this case, the possibility of prejudice is diminished because the hearsay was cumulative and because the victim-declarant was subject to cross-examination at trial. *Id.* at 621-623. Further, identity was not at issue in this case; defendant was the only person to take the victim and her cousin to his apartment to make cookies, and he was well known to the family. For all these reasons, even if Frederick's testimony regarding the victim's statements were admitted in error, reversal is not warrant. See *Lukity*, 460 Mich at 495-496 (stating that evidentiary error does not warrant reversal if, when assessed in the light of the other properly admitted evidence, it does not affirmatively appear more probable than not that a different outcome would have resulted without the error).

### III. OTHER ACTS EVIDENCE

Defendant argues that he was denied due process and a fair trial when the trial court abused its discretion by

admitting evidence of defendant's 2009 Arizona conviction for attempted molestation of a child and testimony by defendant's former stepdaughter that he sexually assaulted her in July 2007 when she was 13 years old. Defendant contends that the evidence was not relevant or similar enough to show a common scheme, plan, or system, and that any minimal probative value was outweighed by its prejudicial effect. The prosecution disputes these arguments and contends that the trial court properly admitted the evidence under MCL 768.27a, which permits evidence of other offenses against minors. We conclude that the trial court did not abuse its discretion and that defendant was not denied a fair trial.

### A. STANDARD OF REVIEW

We review the trial court's decision to admit evidence for an abuse of discretion. *Burns*, 494 Mich at 110. But we review de novo preliminary questions of law regarding whether a statute or evidentiary rule applies, or as defendant claims, constitutional protections require exclusion of evidence. *Benton*, 294 Mich App at 195. The trial court's decision is an abuse of discretion when the result is outside the range of principled outcomes. *Id.*

### B. ANALYSIS

MCL 768.27a(1) provides in pertinent part:

Notwithstanding section 27,[2] in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

---

[2] Section 27, MCL 768.27, provides for the admission of other acts evidence using language similar to that of MRE 404(b)(1).

Our Supreme Court held in *People v Watkins*, 491 Mich 450, 455, 472; 818 NW2d 296 (2012), that MCL 768.27a and MRE 404(b)[3] irreconcilably conflict, but that the Legislature intended the statute, a valid enactment of substantive law, to supersede the court rule. *Watkins*, 491 Mich at 455, 471-475. Evidence relevant because it shows propensity is admissible under MCL 768.27a whereas evidence relevant only because it show propensity is excluded by MRE 404(b). *Watkins*, 491 Mich at 470-472. But the *Watkins* Court held that evidence otherwise admissible under MCL 768.27a still remains subject to the requirements of MRE 403. *Watkins*, 491 Mich at 481. MRE 403 states that although it is relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The *Watkins* Court provided guidance to trial courts in applying MCL 768.27a and the balancing test of MRE 403. First, the propensity inference of the evidence must be weighed in favor of the evidence's probative value. *Watkins*, 491 Mich at 486-487. Second, the Court provided an illustrative, nonexhaustive list of factors that may lead a trial court to exclude evidence under MRE 403:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts

---

[3] MRE 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case."

to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

In the present case, the trial court applied the proper standard by asking whether the evidence was more prejudicial than probative. Considering defendant's July 2007 assaults on his stepdaughter, the trial court correctly found that these were similar to the present crimes. Defendant took the other victim to his apartment, asked her to watch a movie, and penetrated her anally and then vaginally. He also did this again a few days later. Defendant threatened both victims with harm to them or their families if they told. The difference in ages between the two victims (the other victim was thirteen), is not very material. Less than six months elapsed between the two crimes. The evidence of the similar assault against the other victim was very probative and important to the prosecution's case, especially because defendant was able to claim a lack of physical evidence of sexual assault based on Frederick's examination. Also, the passage of time had faded the victim's memory regarding some details. The challenged evidence was relevant because it tended to show that it was more probable than not that the minors were telling the truth. *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010). Our review of the record reveals that the trial court carefully weighed pertinent factors in deciding to admit the evidence. The court also gave a limiting instruction regarding evidence of other crimes. See CJI2d 20.28a. The trial court's decision was within the range of principled outcomes and therefore not an abuse of discretion. *Benton*, 294 Mich App at 195.

The trial court also did not abuse its discretion by admitting evidence of defendant's 2009 Arizona conviction for attempted molestation of a child. A certified copy of the conviction was admitted as an exhibit but details of the conviction were not provided. Clearly, the instant offenses and the Arizona conviction were "of the same general category," *People v Mardlin*, 487 Mich 609, 622-623; 790 NW2d 607 (2010), because they involve sex crimes (or attempted sex crimes) against children. Our Legislature has decided that evidence of other sexual assaults on children is relevant in a case in which a defendant is charged with committing a sexual offense against a minor. MCL 768.27a(1). Such allegations (or here, charged crimes and convictions) do tend to make the complainant's story more believable by showing propensity to commit the charged offense. See *Watkins*, 491 Mich at 492. The Arizona conviction was prejudicial but not unfairly prejudicial. There was no danger of confusion of the issues, misleading the jury, undue delay, or other considerations mentioned in MRE 403. Because defendant went to Arizona after committing the assaults in Michigan, the conduct underlying the 2009 Arizona conviction would not have been too far removed temporally from the instant offenses in Michigan. Further, because there was a conviction, there is no lack of reliability regarding the evidence. Thus, although the details of the crimes cannot be compared, we conclude that the trial court did not abuse its discretion by admitting the evidence in light of the various factors regarding admissibility under MCL 768.27a and MRE 403. *Watkins*, 491 Mich at 487-488.

On the basis of the foregoing, we conclude that the other acts evidence was properly admitted, and defendant was not denied his due process right to a fair trial.

### IV. COMPULSORY PROCESS CLAIM

Defendant filed a pretrial motion to compel the testimony of Dr. Duane Penshorn, who examined the victim on January 13, 2008. Penshorn moved to Texas at some point before trial. The trial court directed the prosecution attempt to produce him, or his report could be admitted in evidence at trial. The defense also proposed to have Penshorn testify by telephone. Although Penshorn apparently agreed to testify by telephone, the prosecution noted that MCR 6.006 might not permit it. The trial court ruled that MCR 6.006 would not permit telephonic testimony because the court did not have two-way interactive video technology. In light of this ruling, the parties stipulated the admission of Penshorn's report.

### A. STANDARD OF REVIEW

We review the trial court's decision regarding evidence for an abuse of discretion. *Burns*, 494 Mich at 110. We review de novo questions of law related to the admission or exclusion of evidence. *Id.*; *Benton*, 294 Mich App at 195. The trial court abuses its discretion when the result is outside the range of principled outcomes. *Benton*, 294 Mich App at 195.

### B. ANALYSIS

Even if the trial court abused its discretion by not allowing Penshorn to testify by telephone, the error does not warrant reversal.

Defense counsel wanted Penshorn produced because he examined the victim on January 13, 2008, a week before Frederick examined her on January 22, 2008, and both doctors found no physical evidence of sexual abuse. Penshorn's report stated that he found "slight

diffuse redness" of the victim's external vulva, but no "obvious scarring or trauma."

Frederick testified at trial that during his examination of the victim he found a little nonspecific erythema, or redness, of the external genitalia. But these findings were not significant regarding sexual abuse. Frederick explained that after 7 to 10 days, redness would have no meaning because the tissue would heal very fast. The victim had no changes to her hymen indicative of sexual abuse, but Frederick noted the hymen could also heal relatively quickly, within four weeks, or it might be left with a "notch." Frederick found no indication of a healed injury. The victim's anal area was also normal, but any small tears to the anus would have healed quickly, within days. In sum, Frederick found no physical evidence of sexual abuse.

Frederick also testified that the absence of physical findings did not necessarily negate sexual abuse because physical evidence of abuse was found in less than 17% of victims, or as low as 4% after 7 to 14 days. Physical findings would be found in the anal area in only 1 in a 1,000 cases after a similar time lapse.

MCL 767.40a(1) requires that the prosecution attach to the information a list of eyewitnesses and witnesses who might be called at trial. If requested by the defense, the prosecution or law enforcement must provide reasonable assistance to locate and serve process on witnesses; prosecution objections must be raised in pretrial motions, and the trial court must hold a hearing to determine the reasonableness of the defense request. MCL 767.40a(5). See also *People v Burwick*, 450 Mich 281, 288-289; 537 NW2d 813 (1995). The trial court has discretion to fashion a remedy for the prosecution's noncompliance with the discovery statute. *People v Williams*, 188 Mich App 54, 58-59; 469 NW2d 4 (1991).

To warrant reversal, defendant must show that he was prejudiced by noncompliance with the statute. *Id.* at 59; *Burwick*, 450 Mich at 295-297; *People v Hana*, 447 Mich 325, 358 n 10; 524 NW2d 682 (1994).

MCL 767.93(1) allows the court to issue a certificate to obtain the presence of an out-of-state material witness. Further, MCL 767.40a(4) requires a showing of good cause for removing a witness from the prosecution's witness list. Forgetting to contact or subpoena a witness is likely not "good cause." Once a witness is endorsed under MCL 767.40a(3), the prosecution must use due diligence to produce the witness. *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). If the court finds a lack of due diligence, the court may give a "missing witness" instruction stating that the jury may infer the witness's testimony would have been favorable to the defense. *Id.* In this case, the trial court made no finding regarding the prosecution's diligence. Furthermore, the defense did not request a "missing witness" instruction and instead agreed to allow admission of Penshorn's report. Finally, the trial court's ruling under MCR 6.006 was technically correct. For trials, the rule only allows the court to use two-way interactive video technology to take testimony with the consent of both parties. MCR 6.006(C)(2).

But assuming for the purpose of analysis that the prosecution was not duly diligent in producing Penshorn, and further assuming that the trial court abused its discretion by not permitting Penshorn to testify over the telephone, defendant has not established he suffered prejudice as a result. First, Penshorn's report that was admitted in evidence was favorable to the defense. Defense counsel was able to argue from it that Penshorn found no physical evidence of sexual assault at a point in time closer to the alleged assault than Freder-

ick's examination. Second, defendant makes no argument regarding how questioning Penshorn in court or over the telephone would have provided any more information to the jury than was provided in his report. Clearly, presenting live testimony is an important factor for determining whether or not a witness is credible, but here the information in Penshorn's report was undisputed. In sum, defendant has failed to establish the prejudice necessary to warrant reversal regarding the alleged failings of the prosecution under MCL 767.40a and the trial court's alleged abuse of discretion in fashioning a remedy. *Hana*, 447 Mich at 358 n 10; *Williams*, 188 Mich App at 58-59. Error in the admission or exclusion of evidence does not warrant reversal if, in light of the other properly admitted evidence, it does not affirmatively appear more probable than not that a different outcome would have resulted without the error. MCL 769.26; *Gursky*, 486 Mich at 619. Defendant has not established outcome-determinative error that warrants reversal.

## V. DOUBLE JEOPARDY

Defendant argues that his conviction for CSC-II was not supported by the evidence and that it violated double jeopardy protections. The prosecution argues that because CSC-I and CSC-II each require proof of a fact that the other does not, the prohibition against double jeopardy is not violated by convicting a defendant of both. We review this claim de novo. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

The Double Jeopardy Clause, US Const, Am V, protects against "(1) multiple *prosecutions* for the same offense after acquittal or conviction; and (2) multiple *punishments* for the same offense." *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). See also

Const 1963, art 1, § 15. In *People v Smith*, 478 Mich 292, 316; 733 NW2d 351 (2007), the Court held that when the Legislature has clearly expressed the intent for multiple punishments, the prohibition against double jeopardy is not violated. When no such intent is clearly expressed, the "same elements" test of *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932) should be applied. *Smith*, 478 Mich at 296, 316. The *Blockburger* test looks at the statutory elements of the offenses and asks whether each offense requires proof of a fact that the other does not. *Nutt*, 469 Mich at 576. This Court has previously applied the *Blockburger* test to a double jeopardy challenge of multiple CSC convictions of different grades. See *People v Garland*, 286 Mich App 1, 5-7; 777 NW2d 732 (2009) (holding that a single act of sexual penetration supported conviction of both CSC-I and CSC-III because each offense contains an element that the other does not).

Application of the *Blockburger* test to defendant's double jeopardy claim requires that we reject it. Defendant was convicted of three counts of CSC-I: two counts based on vaginal penetration and one count based on anal penetration. Defendant was also convicted of one count of CSC-II. The elements of CSC-I in this case are: (1) the defendant engaged in sexual penetration, (2) with a person under 13 years of age. MCL 750.520b(1)(a). "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." MCL 750.520a(r). The elements of CSC-II are: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age. MCL 750.520c(1)(a). The statutory definition of "sexual contact," pertinent here, includes

"the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . ." MCL 750.520a(q). "Intimate parts" includes "the primary genital area, groin, inner thigh, buttock, or breast . . . ." MCL 750.520a(f).

On the basis of the Legislature's definitions of "sexual penetration" and "sexual contact," CSC-I and CSC-II each require proof of a fact that the other does not. See *People v Lemons*, 454 Mich 234, 253-254; 562 NW2d 447 (1997) (holding that CSC-II is a cognate but not lesser-included offense of CSC-I). The differing elements for the offenses of CSC-I and CSC-II demonstrate the Legislature's intent to authorize separate convictions and punishments for these offenses. "Sexual penetration" is an element of CSC-I but not CSC-II. CSC-II requires that "sexual contact" be done for a "sexual purpose," an element not included in CSC-I. Under *Blockburger*, conviction and punishment for both CSC-I and CSC-II does not violate double jeopardy.

Defendant's argument that the evidence did not support his conviction of CSC-II lacks merit. The same evidence that supported defendant's convictions of CSC-I would also support, on the facts of this case, conviction for CSC-II. The jury was properly instructed regarding the elements of each offense, and the evidence was sufficient to support multiple convictions.

VI. INTERSTATE AGREEMENT ON DETAINERS

Defendant argues that under the Interstate Agreement on Detainers (IAD), MCL 780.601, he should have

been brought to trial in Michigan within 180 days after he wrote to the prosecutor on May 17, 2010. The prosecution asserts it complied with the IAD by bringing defendant to trial on June 5, 2012, within 180 days after receiving the certificate required by the IAD on December 28, 2011. The interpretation and application of the IAD is a question of law that we review de novo. *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009).

The IAD provides that an inmate incarcerated in one state may be transported to another for trial on charges in the receiving state. The main purpose of the statute, stated in Article I, is to encourage speedy disposition of pending charges and prevent undue interference with treatment and rehabilitation programs. See *People v Wilden (On Rehearing)*, 197 Mich App 533, 535; 496 NW2d 801 (1992). Article III(a) of the IAD sets forth the procedure for a prisoner against whom a detainer is filed to notify the prosecutor in the detaining state of his place of imprisonment and to request final disposition of the charges. That subpart provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner*, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner *shall* be accompanied by a certificate of the appropriate official having custody of

the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. [MCL 780.601, art III(a) (Emphasis added).]

In the present case, the charges were initiated in April 2008. Apparently while incarcerated in the state of Arizona, defendant sent a letter to the prosecutor asking what warrants were outstanding and how to take care of them.[4] The prosecution acknowledged receiving this letter from defendant on May 17, 2010, but apparently did not respond. Defendant then wrote to the warden of the Arizona prison where he was incarcerated on September 27, 2011. The deputy warden wrote back on September 29, 2011, that "[s]ince the case is for a probation violation and not untried charges the IAD does not apply."[5] Defendant then wrote to the prosecutor and the St. Clair County Clerk on November 2,

---

[4] In discussing this issue, the parties do not state when or if Michigan authorities ever filed with authorities in Arizona a "detainer" regarding the instant charges. As the plain language of the IAD indicates, a detainer from the charging state is required to be filed with the custodial state for its provisions to apply. See *People v Gallego*, 199 Mich App 566, 574; 502 NW2d 358 (1993) ("A detainer must be lodged against a defendant for the IAD to apply.") A "detainer" is generally a "written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state." *Id*. Holds placed in the Law Enforcement Information Network are generally "insufficient to activate the IAD." *Id*. The certificate of inmate status filed by the Arizona Department of Corrections, which the prosecutor received in this case on December 28, 2011, provides no information regarding detainers Michigan filed with Arizona authorizes. We assume in analyzing this issue that a detainer regarding these charges was filed with Arizona authorities, thus implicating compliance with the IAD.

[5] We have not located evidence in the record that Michigan ever filed a detainer with Arizona authorities regarding these charges. See note 4 of this opinion.

2011, demanding final disposition of the charges under the IAD. This letter gave defendant's place of imprisonment and date of the alleged violations. Defendant also wrote to the deputy warden of the Arizona prison where he was incarcerated demanding under the IAD that the warden process the documents required to effectuate his IAD request. After an unsatisfactory response, defendant again repeated his request to prison authorities in correspondence dated December 8, 2011. Finally, on December 19, 2011, an Arizona prison official sent to the St. Clair prosecutor the necessary IAD forms, including the certificate referred to in Article III(a) of the IAD, which provided information regarding defendant's term of commitment, time served, time remaining, and good time earned. The Arizona letter transmitting the required IAD forms is date-stamped "received"[6] on December 28, 2011, by the St. Clair prosecutor.

Assuming that the IAD applies to this case, we note the prosecution correctly argues that commencing defendant's trial on June 5, 2012, complied with the 180-day time requirement of MCL 780.601, art III(a). *Swafford*, 483 Mich at 13-14. The plain language of the IAD provides that an "untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner . . . shall be brought to trial within one hundred eighty days after" the defendant "shall have *caused to be delivered* to the prosecuting officer . . . written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . ." MCL 780.601, art III(a). However, the defendant's request for disposition "*shall* be accompanied by a certificate of the appropriate official having custody of the prisoner,

---

[6] Capitalization altered.

stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence," and other information required by Article III(a). In this case, defendant's demand for disposition of the untried information or complaint, accompanied by the Article III(a) certificate, was not "caused to be delivered" to the prosecutor until December 28, 2011. This is the date on which the 180-day timeframe of the IAD commenced. See *Fex v Michigan*, 507 US 43, 52; 113 S Ct 1085; 122 L Ed 2d 406 (1993) (holding "that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him").

Our Supreme Court has similarly interpreted the nearly identical language, "causes to be delivered," found in Michigan's intrastate 180-day rule that is set forth in MCL 780.131 and MCR 6.004(D), regarding untried charges that are pending against Michigan prison inmates. *People v Lown*, 488 Mich 242, 260, 262; 794 NW2d 9 (2011) (holding that the 180-day period of MCL 780.131 begins "on the day after the prosecutor receives the required notice from the [Department of Corrections]"). See also *People v Williams*, 475 Mich 245, 256 n 4; 716 NW2d 208 (2006). Further, the "statutory trigger" of "notice to the prosecutor of the defendant's incarceration and a departmental request for final disposition of the pending charges," applies equally to MCR 6.004(D). *Williams*, 475 Mich at 259-260.

Consequently, defendant's claim that he was not brought to trial within the time limit required by the IAD is without merit.

VII. SENTENCING ISSUES

A. STANDARD OF REVIEW

The interpretation of the sentencing guidelines and the application of facts to them are legal questions that we review de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). But a trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *Id.* Whether the facts, as found, are adequate to sustain a particular score is a question of statutory interpretation, reviewed de novo. *Id.* We review de novo constitutional challenges to the sentencing guidelines. *People v Drohan*, 475 Mich 140, 146; 715 NW2d 778 (2006).

B. OFFENSE VARIABLE 11

Defendant argues that the trial court improperly scored offense variable (OV) 11, MCL 777.41, at 50 rather than 25 points because evidence supported only one "additional" penetration beyond the sentencing offenses. The prosecution agrees that OV 11 should have been scored at 25 points, but asserts that resentencing is not required because the scoring error would not have altered the applicable minimum-sentence guidelines range. See MCL 777.62.

If the facts were as represented by the prosecution, we would agree that its concession of error regarding the scoring of OV 11 would not warrant remand for resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Id.* But the sentencing information report in the trial court file and the transcript of the sentencing proceeding both indicate that defendant's total OV score was 120 points, including the 50 point

score for OV 11. Applying the stipulated correct OV 11 score of 25 points would reduce defendant's OV level from VI to V and change the guidelines' recommended minimum-sentence range to 225 months to 750 or life. MCL 777.62; MCL 769.12. While the 50 year (600 months) minimum sentence that the trial court imposed is within the corrected guidelines range, resentencing is still required because a defendant is entitled to be sentenced based on accurate information. *People v Jackson*, 487 Mich 783, 793-794; 790 NW2d 340 (2010); *Francisco*, 474 Mich at 89-92. Although the record indicates that the trial court likely would have imposed the sentence it did regardless of any deviation in the guidelines scoring or recommended minimum-sentence range, the trial court did not clearly say so. See *Francisco*, 474 Mich at 89 n 8. Consequently, we must remand for resentencing based on corrected sentence guidelines. *Jackson*, 487 Mich at 793-794; *Francisco*, 474 Mich at 89-92.

### C. SIXTH AMENDMENT CHALLENGE

Defendant argues, citing *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), that judicial fact-finding permitted by Michigan's sentencing guidelines violates the Sixth Amendment. He argues that the recommended minimum-sentence range derived from Michigan's sentencing guidelines is essentially a "mandatory minimum sentence" comparable to those struck down in *Alleyne*. We disagree.

In *People v Herron*, 303 Mich App 392, 399; 845 NW2d 533 (2013),[7] this Court rejected the claim that under *Alleyne* "judicial fact-finding using Michigan's

---

[7] Our Supreme Court has held the defendant's application for leave to appeal in *Herron* in abeyance pending its decision in *People v Lockridge*, 496 Mich 852 (2014). See *People v Herron*, 846 NW2d 924 (2014).

sentencing guidelines ... as a guide to determine a minimum term of an indeterminate sentence from a recommended range violates the Sixth and Fourteenth Amendments of the United States Constitution." Rather, judicial fact-finding and the sentencing guidelines inform the trial court's sentencing discretion within the maximum determined by statute and the jury's verdict. *Herron*, 303 Mich App at 403. Because judicial fact-finding under Michigan's sentencing guidelines does not establish a mandatory minimum sentence but only informs the exercise of judicial discretion, the fact-finding does not violate due process or the Sixth Amendment's right to a jury trial. *Id.* at 403-404. We must follow *Herron*, MCR 7.215(J)(1); consequently, we reject defendant's constitutional challenge to Michigan's sentencing guidelines.

### VIII. SUMMARY

The trial court did not abuse its discretion by ruling inadmissible evidence of a sexual assault on the victim by her then stepfather that occurred about one year before the instant offenses, by admitting statements the victim made to Frederick, or applying MCL 768.27a and the balancing test of MRE 403 to admit evidence of defendant's Arizona conviction and testimony about a 2007 assault on another victim. Defendant was not denied his right to present a defense or confront his accusers; defendant received a fair trial.

With respect to the prosecution's alleged failure to comply with MCL 767.40a by not producing Penshorn in person and the trial court's alleged abuse of discretion in failing to permit Penshorn to testify by telephone at trial, we conclude that defendant has not established that these alleged errors were outcome determinative. Consequently, these claims do not warrant reversal.

Defendant's various constitutional and statutory claims also lack merit. Because CSC-I and CSC-II each require proof of a fact that the other does not, defendant's convictions of both on the same facts do not violate double jeopardy. The prosecution complied with the IAD by bringing defendant to trial within 180 days of receiving the necessary Article III(a) documents from Arizona authorities. And, judicial fact-finding under Michigan's sentencing guidelines does not violate the Sixth or Fourteenth Amendments of the United States Constitution.

Last, because the prosecution concedes that OV 11 was erroneously scored at 50 points rather than 25 points, and correction of this error reduces defendant's sentencing guidelines recommended minimum-sentence range to 225 to 750 months or life, we must remand for resentencing on the basis of accurate information.

We affirm defendant's convictions but remand for correction of the sentencing information report and resentencing. We do not retain jurisdiction.

MARKEY, P.J., and SAWYER and WILDER, JJ., concurred.