# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 18, 2015

Plaintiff-Appellee,

v

No. 319267
Wayne Circuit Court
LC No. 13-000735-FC

WILLIAM ONEAL WATTERS,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(2)(b) (defendant age 17 or older and victim under age 13), and three counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (victim under age 13). Defendant was sentenced as a habitual offender, second offense, MCL 769.10, to 25 to 40 years in prison for each count of CSC I and 5 to 15 years for each count of CSC II.[1] We affirm.

Defendant was convicted of sexually assaulting his stepdaughter on numerous occasions from November 2010 to November 2011. Defendant denied the allegations and, at trial, claimed that he and the victim's mother, i.e., his wife, were in the midst of a highly charged breakup, which caused the mother to fabricate the allegations and coach the victim, as well as her older brother, who testified that he witnessed instances of sexual abuse. Among other significant evidence, the prosecution played for the jury videos of forensic interviews conducted with the victim and her brother.

---

[1] The trial court ruled that defendant was to serve his sentence for Count I (CSC I) consecutive to his sentence for Count IV (CSC II), with all other sentences served concurrently. Although not argued by defendant, we note that the victim's testimony was sufficient to allow the trial court to find that Count I arose "from the same transaction" as Count IV and, therefore, properly exercise is discretion to impose consecutive sentences under MCL 750.520b(3). *People v Ryan*, 295 Mich App 388; 819 NW2d 55 (2012).

In its case, the defense sought to introduce testimony from an expert in forensic interviewing protocol, to testify that certain mandated forensic interviewing protocols had not been followed by the interviewer. In response to the prosecutor's objection, the trial court ruled that the expert could testify that such protocols exist and that they should be followed. However, the court ruled that the expert could not reference any particular aspects of the protocol nor point out where she believed the interviewer had failed to adhere to them.

Defendant frames this argument under the rubric of a denial of his constitutional right to present a defense. However, it is more properly phrased as an argument that the trial court improperly excluded portions of the expert's testimony and, accordingly, will be addressed as such.[2]

"We review the trial court's decision to admit evidence for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 94; 854 NW2d 531 (2014). "The trial court's decision is an abuse of discretion when the result is outside the range of principled outcomes." *Id*.

We begin our analysis by observing the fundamental principle that an expert may not opine that child sexual abuse did or did not occur. See *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). Nor may an expert express an opinion as to whether the child is or is not worthy of belief. *Id*. Thus, the court's ruling directed at excluding such opinion testimony was not erroneous.

Additionally, under the circumstances, we are simply not able to find an abuse of discretion by the trial court in so limiting Dr. Okla's testimony. As had been stated, the trial court's discretion is abused "when the trial court chooses an outcome falling outside th[e] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). This standard remains highly deferential, being based on the venerable principium that the trial court is in the superior position to engage in that exercise of discretion. See *id*. at 270. The trial court permitted Dr. Okla to explain what a forensic interview is, that forensic interviews in Michigan must be conducted pursuant to a particular protocol, and what that protocol entails. The trial court concluded that the protocol *itself* was not difficult to understand, and allowing Dr. Okla to comment on what she believed to be specific violations thereof came dangerously close to impermissible commentary on the credibility of the witnesses. We do not find the trial court's decision to be unprincipled.

It is the jury's decision as to what evidence to believe. *People v Unger*, 278 Mich App 210, 222; 749 NW 2d 272 (2008). Michigan's *Forensic Interviewing Protocol* (3rd Ed) was admitted as an exhibit prior to Dr. Okla testifying. Consequently, the evidence of the protocol was admitted in its entirety, and Dr. Okla was allowed to supplement the protocol itself by

---

[2] In any event, we have reviewed defendant's argument and find that he was not deprived of his constitutional right to present a defense because the expert was allowed to testify, albeit in a limited fashion. See *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967) ("The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense . . . .").

explaining its mandatory nature. Additionally, defendant's attorney argued during closing that based on Dr. Okla's testimony and the protocol exhibit, the jury should look at specific pages of the protocol to understand what violations of the protocol had taken place during the interview. The jury was therefore properly afforded the opportunity to observe for itself whether, as defendant argued, the protocol had indeed not been followed and to draw its own conclusions about what effect any such violations might have had on the witnesses' credibility. Consequently, we find no error.

In addition to there being no error in limiting Dr. Okla's testimony, the victim and her brother offered live testimony during which they were subject to cross-examination. See MCL 750.520h (CSC victim's testimony need not be corroborated). In addition, defendant was able to present evidence in support of his assertion that the reason the children made the allegations was that his wife had coached them to do so as a result of rage caused by defendant's infidelity. Defendant was allowed to testify in this regard and presented testimony from his brother and a friend concerning the intense fights between defendant and his wife, as well as defendant's good relationship with the victim and her brother. Therefore, we cannot find that defendant was precluded from presenting a meaningful defense.

The jury heard the sworn testimony of the children and found it more credible than that of the defendant, a determination with which we will not interfere on appeal. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). The trial court did not err in limiting the testimony of Dr. Okla. Accordingly, reversal is not warranted.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly