*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

AIDEN MICHAEL WYSOCKI,

Defendant-Appellee.

UNPUBLISHED
February 25, 2025
1:28 PM

No. 368411
Newaygo Circuit Court
LC No. 2023-013163-FC

AFTER REMAND

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

This case returns to us after remand to the trial court for an evidentiary hearing regarding evidence that defendant seeks to admit involving the complainant's sexual conduct. We reverse the trial court's order and remand for further proceedings.

## I. BACKGROUND

Defendant has been charged with five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). In our previous opinion, we explained the facts as follows:

> In July 2017, when the complainant, MG, was 11 years old, she attended an overnight camp where defendant was a counselor. Three years later, in September 2020, MG's mother found text messages on MG's phone referring to MG being sexually assaulted at the camp. MG then disclosed that defendant had sexually assaulted her multiple times. MG's mother reported the information to the police. The trial court held a preliminary examination, after which the case was bound over to the circuit court.

-1-

Before trial, defense counsel obtained a copy of a Newaygo County Sheriff's Office report about an incident that purportedly occurred in March 2020, when MG was 14 years old. According to the report, an 18-year-old man, who claimed to be 16 years old, picked up MG at her home around 1:00 a.m. The two kissed, and then the man started to unzip MG's pants, but MG stopped him and ended the encounter. The man immediately complied and was going to drive her home, but MG's father arrived and took her home. MG's mother called the sheriff's office, and MG reported to the deputy sheriff that she went with the man because she had not "been getting a lot of attention from her father." The report elaborated on this, "She stated her father tells her he loves her but she doesn't ever feel like he actually does. She stated she just wanted to get attention from her dad and she didn't care whether it was good or bad."

Defense counsel moved to admit the report as an exception to Michigan's rape-shield law, MCL 750.520j. Counsel argued that the conduct described in the report was arguably not covered by the law, but that even if it was, the conduct showed that MG had a motive to lie, i.e., to get attention from her father. The trial court held a hearing on the motion, but did not hold an *in camera* review of the evidence, stating that both parties were in possession of the report. The trial court agreed with the prosecutor that the conduct was covered by the rape-shield law, but agreed with defense counsel that it was "highly relevant . . . as to motive." The trial court granted defendant's motion. [*People v Wysocki*, unpublished per curiam opinion of the Court of Appeals, issued August 15, 2024 (Docket No. 368411), pp 1-2.]

The prosecutor appealed, and we remanded the case for the trial court to hold an *in camera* review of the proposed evidence. *Id*. at 4.

On remand, the trial court held a hearing. MG testified about the incident and explained that she told the deputy that she had wanted more attention from her father "partially because [she] wanted him to notice other things that were going on in [her] life, but also because [she] was 14 and stupid, and teenagers are allowed to make mistakes." The prosecutor asked MG why she felt like she was not getting attention from her father, and MG answered, "There's no way nobody even noticed what happened to me." MG agreed that she told the deputy that she invited the person over to get her father's attention, but stated that getting her father's attention was not the primary purpose of inviting him. MG thought at the time that the person was 16 years old, although she later learned that he was 18 years old. MG testified that her mother had always routinely checked her phone, not just after the March 2020 incident, because it was an agreement when she got her phone.

Deputy Hunter Niederer testified that he responded to the March 2020 incident and spoke with MG, who told him that she did what she did that evening because she was not getting enough attention from her father. MG's father testified that MG told him that she was trying to get his attention, which he thought was "ridiculous" because, if that were the case, she would have gone out of their house through the main door, which was right by his bedroom and "squeaks" and "rattles." MG's father explained, however, that, at the time, he was working, and he was caring for his mother, who was dying, "[s]o there was a lot going on."

-2-

Defense counsel explained that he wanted to introduce the evidence of MG trying to get her father's attention, and he was not necessarily interested in what happened in the truck. Defense counsel stated the point was not to argue that MG was "promiscuous," but, rather, to show that MG snuck out to get her father's attention. Defense counsel argued that prosecutors always argue at trial that a victim would have no reason to make up allegations, but this incident showed MG's motive. According to defense counsel, this was "a major confrontation issue because we have a motive that the witness herself has provided that we're not allowed to explore."

The trial court found:

> First, this Court finds that the Rape Shield Act does apply as the male was an adult and MG was a minor and they were kissing, and he unzipped her pants. After he unzipped her pants, she told him no and that is when her father approached the vehicle.

> Second, the Court finds that the confrontation clause requires admission of the evidence. Although the March 2020 incident does not contain a lie by the victim it is a "sexual incident" with an older man done by MG for the purposes of obtaining attention from her father. The Court believes this is very relevant and may show a motive to lie. She testified she wanted more attention from her father and that is why she agreed to meet the man and snuck out of the house.

The prosecutor's appeal is now ready for resolution.

## II. ANALYSIS

We review de novo constitutional claims and preliminary questions of law about the admissibility of evidence. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). We review for an abuse of discretion a trial court's decision on whether to admit evidence. *People v Hackett*, 421 Mich 338, 349; 365 NW2d 120 (1984).

Relevant evidence is generally admissible. MRE 402. "Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) (cleaned up). See also MRE 401. A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issue, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. "Unfair prejudice may exist when there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

MCL 750.520j, the rape-shield law, prohibits evidence of a victim's sexual activity unrelated to the alleged incident, with two exceptions not relevant here. As explained by our Supreme Court, "in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible." *Hackett*, 421 Mich at 347-348. The rape-shield statute does not, however, provide that such evidence is never admissible. *Id*. at 348. "[I]n certain

-3-

limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." *Id.*

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. "The right to confront and to cross-examine witnesses is primarily a functional right that promotes reliability in criminal trials." *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011) (cleaned up).

Evidence of a victim's sexual conduct may be admissible for showing a complainant's ulterior motive for making a false charge. *Hackett*, 421 Mich at 348. When a trial court is exercising its discretion and determining whether the evidence is admissible, it "should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id.* at 349. See also *People v Arenda*, 416 Mich 1, 5, 8; 330 NW2d 814 (1982).

First, in this case, the proposed evidence falls under the rape-shield statute as it relates to MG's sexual conduct. Although "sexual conduct" is not defined by this statute, this Court has previously explained that "sexual" means "of, relating to, or associated with sex or the sexes or having or involving sex." *People v Masi*, 346 Mich App 1, 13; 111 NW3d 521 (2023) (cleaned up). "Conduct" means "a mode or standard of personal behavior especially as based on moral principles or the act, manner, or process of carrying on." *Id.* (cleaned up). Although MG sneaking out to get her father's attention would not in and of itself fall under the rape-shield statute, and defense counsel seemingly did not intend to focus on the details of what occurred in the truck, the proposed evidence involved sexual conduct and does not fall under an exception to the rape-shield statute.

Accordingly, the trial court properly found that the proposed evidence fell under the rape-shield statute, but it erred by determining that the evidence was otherwise admissible. Defense counsel argues that the evidence of MG's conduct is relevant to show her motive for making a false allegation against defendant. Here, MG told a deputy that she snuck out to meet a boy in March 2020 to get her father's attention, although she testified at the evidentiary hearing that getting her father's attention was not the sole motivation. Even if it were, however, not all acts that MG could commit to get her father's attention could be properly admitted as evidence of a motive to lie in a CSC trial. For example, MG could have engaged in charitable acts or tried out for the school play to get her father's attention. Neither of these would be relevant to an argument that MG had a motive to lie against defendant. If MG had made false allegations against another individual, however, that would be directly relevant and admissible. See *Hackett*, 421 Mich at 348.

Instead, 14-year-old MG snuck out with a person, who she thought was a 16-year-old boy. She kissed him and then stopped him from advancing the situation. He stopped. There is no evidence that MG lied to the person, her parents, or the deputy. At most, there is the act of MG leaving her house without telling one of her parents. But, there is no indication that it was the act of sneaking out—the only arguably deceptive act by MG—that she committed to get attention from the father. Rather, it was the meeting up with and kissing the person (who she thought was a boy). MG's actions here are simply too attenuated to support defendant's argument for

admissibility. Thus, the evidence was not relevant to MG's credibility and "would have only created a real danger of misleading the jury and an obvious invasion of the victim's privacy." *Duenaz*, 306 Mich App at 93 (cleaned up)

Defendant argues on appeal that when MG's attempt to get her father's attention failed in March 2020, she "upped the ante by making false allegations against [defendant]." Defendant relies on *People v Dabb*, unpublished per curiam opinion of the Court of Appeals, issued December 4, 2007 (Docket No. 271566), p 1, in which a panel of this Court held that evidence of the complainant being found abusing another child showed a strong ulterior motive for making a false charge, by deflecting blame. *Id*. at 2. This case significantly differs, however. MG was not deflecting blame to cover up for a serious offense against another person. MG's act of sneaking out with a person she thought was close to her age bears no similarity to the conduct of which MG accuses defendant. Defendant is also not attempting to introduce evidence of MG's untruthfulness because there is no evidence that she was untruthful.

As the prosecutor argues, the evidence is only marginally relevant, if at all. The marginal probative value was substantially outweighed by the danger of unfair prejudice or confusion of the issues. Further, excluding the evidence does not violate the Confrontation Clause. See *Duenaz*, 306 Mich App at 90. Accordingly, the trial court abused its discretion by ordering admission of the evidence.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young