# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 9, 2017

Plaintiff-Appellant,

v

No. 337954
Wayne Circuit Court
LC No. 89-005069-01-FC

BERNARD YOUNG,

Defendant-Appellee.

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

In 1989, defendant was convicted, following a bench trial, of six counts of criminal sexual conduct in the first degree (victim under 13 years of age) (CSC-I), MCL 750.520b(1)(a). Defendant was sentenced to concurrent terms of 60 to 100 years' imprisonment for each count. The prosecution now appeals by leave granted the circuit court's order granting defendant's motion for relief from judgment.[1] We affirm.

This case arises from the sexual abuse of two boys, AT and TT, who, at the time of the sexual abuse, were six and five years old respectively. During trial, AT and TT's mother (mother) testified that when she was away at work, she entrusted AT, TT, and their younger half-sister, LC, to the care of her live-in boyfriend, William Clark. Clark is LC's biological father, and AT and TT referred to Clark as "dad." It was mother's understanding that only Clark babysat the children when she was away, but she later learned from her children that either defendant, who lived across the street, or defendant's brother, who was her next-door neighbor, would occasionally watch the children.

On one evening in the summer of 1988, mother discovered AT and TT engaging in oral sex in their bedroom. Mother sought out resources for assistance, and ultimately, AT and TT were admitted to Aurora Hospital in Detroit for treatment. In April 1989, the boys told their therapist that defendant had sexually abused them from January 1988 to July 1988. Based on those disclosures, the assigned assistant prosecuting attorney recommended an arrest warrant on

---

[1] *People v Young*, unpublished order of the Court of Appeals, entered May 18, 2017 (Docket No. 337954).

-1-

April 16, 1989. The investigator's report attached to the warrant stated that both boys claimed defendant "inserted his penis into their anus and mouth." The boys also claimed that defendant "forced them to engaged [sic] in . . . sexual activities with each other" and were forced to "put their penis into each other [sic] mouth and anus."

Before defendant's trial, Detroit police began conducting a second investigation, this time investigating Clark for sexually abusing AT and TT. On May 17, 1989, police investigators interviewed AT and TT and both boys accused Clark of sexual abuse. TT told investigators that Clark "sucked" TT's "private parts" and said Clark "put his penis in my butt." TT also said Clark put his penis in TT's mouth and that Clark did so on TT's fifth birthday. TT further said that Clark made AT "put his penis in [TT's] butt" and TT's mouth. AT's answers were similar to TT's. However, AT added that defendant was never in the house when Clark sexually abused them and Clark threatened them to not tell anyone. It is undisputed that the assistant prosecuting attorney did not initiate criminal proceedings against Clark until after defendant's sentence.

On August 14, 1989, AT and TT testified at trial about the sexual abuse defendant committed while babysitting them. AT and TT said that the abuse occurred when mother and Clark were not present in their home. AT said that defendant "put his penis where I sit at." AT also explained that defendant told him to "suck" defendant's penis, and defendant also "sucked" AT's penis. AT testified that defendant made AT "put it where [defendant] sit at." Defendant also reportedly forced AT and TT to engage in those same sexual acts on each other. TT testified that defendant "messed with [TT's] private parts and made TT "suck[ AT's and defendant's] private." TT also said that defendant "[p]ut his penis where I sit."

Defendant's trial theory was that the children fabricated the sexual abuse allegations to ensure they would no longer live with Clark, who had physically abused them. In support of this theory, defendant elicited testimony from several witnesses that Clark used a belt to discipline the children. Defendant also called his brother, Braxter Young, who testified that he was Clark's next-door neighbor and was friends with the family for approximately eight years. Young saw the family nearly every day and would babysit the children on occasion. He denied ever seeing defendant babysit the children and asserted that his brother did not visit their house since Clark accused defendant of stealing something from the home. He also testified that his brother had moved from their neighborhood before the alleged sexual abuse took place. Defendant provided similar testimony on his own behalf, denying he sexually abused AT and TT, and claiming he had not been to the children's home since 1986 when Clark had accused him of theft.

In 2016, defendant obtained Clark's police file from a Freedom of Information Act (FOIA) request. The records showed Clark was under investigation for sexually abusing AT and TT while defendant's prosecution was pending. Among the records obtained were AT's and TT's witness statements accusing Clark of almost identical sexual conduct that the children had accused defendant of committing just a month earlier. Indeed, AT and TT accused Clark of sexual abuse during the same timeframe during which defendant's abuse reportedly occurred. The FOIA records further revealed that the assistant prosecutor and lead officer assigned to prosecute defendant were the same prosecutor and officer reviewing and investigating Clark for his sexual abuse of AT and TT. It is also noteworthy that the records show police requested the assistant prosecutor to charge Clark for sexually assaulting AT and TT several months before defendant's trial, but for reasons that are unclear from the record, the assistant prosecutor did not

issue the charges until November 9, 1989, approximately two months after defendant's sentencing. Clark was then charged with multiple counts of CSC-I and later accepted an offer from the same assistant prosecuting attorney to a reduced charge of second-degree child abuse. Clark was later sentenced to three years' probation.

Defendant filed his third motion for relief from judgment in 2016,[2] providing affidavits from AT and TT in which they recanted their 1989 testimony, swore that Clark actually abused them, and claimed they lied at defendant's trial because they were afraid of Clark. A few months later, defendant received the documents from the FOIA request and filed a supplemental brief, claiming that the prosecution intentionally suppressed the materials from Clark's police investigation, which constituted material evidence under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Following a multi-day evidentiary hearing, the circuit court concluded that the suppression of the records from the Clark investigation constituted a *Brady* violation, and it granted defendant's motion, vacated defendant's convictions and sentences, and granted a new trial.

The prosecution contends that the circuit court erred when it granted defendant's third motion for relief from judgment. We disagree.

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law." *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citations omitted). "[T]he interpretation of a court rule is a question of law and is reviewed de novo." *People v Hawkins*, 468 Mich 488, 497; 668 NW2d 602 (2003) (citations and quotation marks omitted). "Similarly, [t]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (citation and quotation marks omitted).

The prosecution first claims that the circuit court erred when it ruled that defendant's third motion for relief from judgment was not barred by MCR 6.508(D)(2). The prosecution's contention is without merit.

MCR 6.502(G)(2) provides, in relevant part, that "[a] defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion." MCR 6.508(D) states in part:

> **(D) Entitlement to Relief.** The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

---

[2] In defendant's second motion for relief from judgment, filed in 2009, he claimed that the prosecution withheld the fact that Clark was charged with CSC-I. Defendant claimed this amounted to a *Brady* violation, but the circuit court denied the motion.

* * *

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

>> (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.]

Defendant claimed in his second motion for relief from judgment that the prosecution's failure to disclose that Clark had been charged with sexually abusing AT, TT, and LC violated defendant's right to due process pursuant to *Brady*, which defendant supported by providing a copy of Clark's felony information and documentation relating to parental termination proceedings that referenced Clark's alleged sexual abuse of the children. Ultimately, the circuit court denied defendant's second motion for relief from judgment without explicitly addressing defendant's *Brady* claim. Defendant claimed in a supplemental brief to his third motion for relief from judgment that the prosecution had violated his right to due process pursuant to *Brady* based on newly discovered evidence, i.e., the police records relating to Clark's sexual abuse. Thus, the prosecution contends that this is the second occasion that defendant has raised a *Brady* claim concerning Clark's sexual abuse of AT and TT, and "[t]here is absolutely no meaningful distinction between the two claims." However, defendant's current *Brady* claim is premised on newly discovered evidence that was not available to defendant at the time he raised his initial *Brady* claim—AT's and TT's witness statements from the May 17, 1989 police interview and other records from Clark's police investigation.

The prosecution argues that there is nothing "materially different" between the evidence defendant relied on for his second motion for relief from judgment and Clark's police records provided in the third motion, and for that reason, the circuit court erred when it granted defendant's motion. However, there is a substantial difference between the two. Defendant's second motion was premised on evidence that merely showed Clark was subsequently charged with CSC-I after defendant's trial and that documentation from child protective proceedings indicated Clark may have sexually abused them when mother was not home. There was no evidence that the government failed to disclose evidence of Clark's similar sexual abuse before defendant's trial. As the circuit court properly concluded, defendant's third motion was premised on AT's and TT's witness statements taken in May 1989, approximately one month after defendant had been charged and before defendant's trial. Thus, defendant's *Brady* claim

-4-

concerns the specific pieces of evidence from Clark's investigation that was not disclosed. AT's and TT's witness statements, which specifically describe when and how Clark sexually abused them, are entirely different from the general and vague post-trial evidence that defendant provided in support of his second motion for relief from judgment.

Next, the prosecution contends that *People v Cress*, 468 Mich 678; 664 NW2d 174 (2003), governs the substance of defendant's claim. In *Cress*, the Michigan Supreme Court reiterated:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*Id*. at 692 (citations and quotation marks omitted).]

The prosecution argues that the circuit court should have denied defendant's third motion for relief from judgment because defendant could have obtained Clark's police records by exercising reasonable diligence. However, the prosecution has not provided any legal authority in support of its position that *Cress*, which concerns whether a defendant is entitled to a new trial based on newly discovered evidence, governs defendant's due process claim under *Brady*. " 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' " *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016), quoting *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Regardless, the Michigan Supreme Court has previously rejected the adoption of a *Brady* test that incorporated a diligence requirement. See *People v Chenault*, 495 Mich 142, 151-152, 154-155, 159; 845 NW2d 731 (2014) (rejecting a modified *Brady* test which included a requirement that the defendant "did not possess the evidence nor could he have obtained it himself with any reasonable diligence," because it was not doctrinally supported and because it undermined the purpose of *Brady*). Therefore, the prosecution's contention is also unavailing on its merits.[3]

The prosecution also claims that the circuit court erred when it concluded defendant had demonstrated actual prejudice under MCR 6.508(D)(3)(b)(i)[4] because defendant established a *Brady* violation. We disagree.

---

[3] The prosecution does not challenge the circuit court's finding that defendant had good cause under MCR 6.508(D)(3)(a) for failing to raise a *Brady* claim based on Clark's police records, and therefore, we do not address the issue.

[4] MCR 6.508(D)(3)(b)(i) defines actual prejudice as "in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *Chenault*, 495 Mich at 149, quoting *Brady*, 373 US at 87. "The essential components of a *Brady* violation are as follows: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " *Dimambro*, 318 Mich App at 212-213, quoting *Chenault*, 495 Mich at 149-150 (citation and quotation marks omitted). Stated differently, the controlling test for *Brady* is that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Chenault*, 495 Mich at 155.

As explained by the Michigan Supreme Court:

The contours of these three factors are fairly settled. The government is held responsible for evidence within its control, even evidence unknown to the prosecution, *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995), without regard to the prosecution's good or bad faith, *United States v Agurs*, 427 US 97, 110; 96 S Ct 2392; 49 L Ed 2d 342 (1976) ("If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor."). Evidence is favorable to the defense when it is either exculpatory or impeaching. *Giglio v United States*, 405 US 150, 154; 92 S Ct 763; 31 L Ed 2d 104 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule [of *Brady*]."), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985). This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . ." *Kyles*, 514 US at 434; 115 S Ct 1555. The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. *Id.* at 436; 115 S Ct 1555. [*Chenault*, 495 Mich at 150-151 (alteration in original).]

First, the prosecution argues that the circuit court erred when it found that the prosecution suppressed the records from the Clark investigation. This argument fails.

A *Brady* claim requires a finding that the prosecution actually suppressed the evidence in question. "[T]he individual prosecutor [does have] a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police[.]" *Dimambro*, 318 Mich App at 213, quoting *Kyles*, 514 US at 437 (alteration in original). "The

prosecution's failure to disclose exculpatory or material evidence in its possession constitutes a due process violation regardless of whether a defendant requested the evidence." *People v Henry (After Remand)*, 305 Mich App 127, 157; 854 NW2d 114 (2014), citing *Brady*, 373 US at 87.

There is no dispute that the prosecution was, at some point, in possession of the Clark file. The assistant prosecutor at the time was assigned to both cases that were ongoing. Even if this was not the case, she was under a duty to learn of any favorable evidence that the police had discovered. *Dimambro*, 318 Mich App at 213. Therefore, the prosecution cannot argue that it did not know about the evidence. Instead, the prosecution argues that there simply was no proof that it failed to disclose the witness statements to the defense. This argument fails. Defendant has adamantly proclaimed in his briefing below and on appeal that he never received the *Brady* material, and we detect no clear error in the circuit court's finding that "the *Brady* material was never disclosed to [defendant] before trial because there is no indication that the *Brady* material was provided to him before trial." As the circuit court explained, there was no indication that defense counsel knew about the witness statements either before or during trial. A review of the record shows that defense counsel did not file any pre-trial evidentiary motions seeking to admit the children's statements, the prosecution removed Clark from the witness list and defense counsel did not object to the removal, defense counsel's examination of AT and TT did not suggest that defense counsel knew about the Clark investigation, and there was no mention of possible sexual abuse during defense counsel's opening or closing argument despite the fact that evidence Clark was physically *and* sexually abusive was consistent with defendant's theory of the case. As the circuit court correctly reasoned, there was no evidence to suggest that defense counsel received the records from the Clark investigation, and the trial court's findings were not clearly erroneous. Therefore, defendant has shown that the prosecution failed to disclose the evidence, and the circuit court did not abuse its discretion concerning this element when it granted defendant's third motion for relief from judgment.

The prosecution argues that even if the evidence was suppressed, the circuit court erred because the records from the Clark investigation were not material to defendant's case. This argument fails.

In *Wood v Bartholomew*, 516 US 1, 5-6, 8; 116 S Ct 7; 133 L Ed 2d 1 (1995), the United States Supreme Court held that polygraph examinations of two state witnesses, which were inadmissible as evidence under state law, were not "material" under *Brady* because those items could not be introduced at trial and only supported weak suppositions regarding their potential impact. Here, to determine materiality, the issue first turns on whether the evidence from Clark's police investigation could have been introduced at trial. This necessitates a review of Michigan's rape-shield statute.

MCL 750.520j, known as the rape-shield statute, provides, in relevant part:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material

to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. [MCL 750.520j(1)(a) and (1)(b).]

Thus, "[t]he rape-shield statute 'bars, with two narrow exceptions, evidence of *all* sexual activity by the complainant not incident to the alleged rape.' " *People v Duenaz*, 306 Mich App 85, 91; 854 NW2d 531 (2014), quoting *People v Adair*, 452 Mich 473, 478; 550 NW2d 505 (1996) (citation and quotation marks omitted). The statute will not bar "testimony regarding sexual subjects involving the complainant if such testimony falls outside the scope of the statute." *People v Sharpe*, 319 Mich App 153, ___; 899 NW2d 787, 793 (2017), quoting *People v Ivers*, 459 Mich 320, 328; 587 NW2d 10 (1998) (quotation marks omitted). "Although consent is not a relevant defense to a CSC charge involving an underage minor, Michigan courts have applied the rape-shield statute in cases involving child victims." *Duenaz*, 306 Mich App at 92 (citations omitted).

We must first determine, as the circuit court did, whether AT's and TT's witness statements made during the Clark investigation fall within the scope of the rape-shield statute. This Court has held that the rape-shield statute "was enacted to prohibit inquiry into a victim's prior sexual encounters" when that evidence is "not incident to the alleged rape." *Duenaz*, 306 Mich App at 91-92 (citation and quotation marks omitted). The circuit court correctly concluded that the evidence from the Clark investigation would not be admissible to inquire into the boys' prior or concurrent sexual encounters. Instead, the circuit court concluded it would be admissible to prove Clark, rather than defendant, committed the sexual abuse. Moreover, the rape-shield statute, while barring "specific instances of sexual conduct," MCL 750.520j(1), does not bar specific instances of sexual conduct "incident to the alleged rape." *Duenaz*, 306 Mich App at 91-92. If the statute barred all such instances, then evidence of the sexual abuse underlying the charges would be inadmissible unless it fell within either of the two delineated exceptions. The statute does not bar such evidence. The witness statements relating to the Clark investigation are not only incident to the alleged rape, but arguably direct evidence of the rape at issue in this case. Importantly, the sexual acts that the boys described concerning defendant and Clark were, as the circuit court noted, nearly identical. The boys said that each of the two men "put his penis where I sit at." They also said that defendant and Clark performed oral sex on the boys. Additionally, AT and TT said both men forced them to perform sexual acts on each other. Furthermore, the boys allege the sexual abuse occurred during the exact same narrow timeframe from January 1988 to July 1988, as referenced in defendant's and Clark's felony information. When taken together, the circuit court concluded the Clark allegations would be admissible to show that Clark, as opposed to defendant, sexually abused the children, not to inject the children's other sexual victimization into the trial. For that reason, the circuit court did not abuse its discretion when it granted defendant's motion because the undisclosed evidence was outside the scope of the rape-shield statute and would have been admissible at trial.

The prosecution also claims that even if the records from Clark's investigation were admissible, they are neither favorable to defendant nor material to his guilt. Again, the prosecution's argument is without merit.

"To establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Chenault*, 495 Mich at 150 (citation omitted). The evidence need not demonstrate that defendant would have ultimately been acquitted. *Kyles*, 514 US at 434. Instead, "[t]he question is whether, in the absence of the suppressed evidence, the defendant 'received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *Chenault*, 495 Mich at 150-151 (citation omitted).

The witness statements from Clark's investigation could have been used to show that Clark, rather than defendant, had sexually abused the children. Therefore, the evidence is material, and the circuit court did not abuse its discretion when it granted the motion and concluded defendant was denied a fair trial. The allegations that AT and TT made against Clark were strikingly similar to their trial testimony against defendant. The boys described the same sexual acts, claiming they were forced to perform oral sex on their abusers, to perform anal sex on their abusers, and to engage in sexual acts with each other. AT told the investigator that Clark threatened them not to say anything about the sexual abuse, and TT said he was abused when he was five years old—the same age he claimed defendant abused him. Additionally, the boys used the same terminology to explain the sexual acts against them. For instance, they said that both men put their penises were they "sit at." The evidence, when considered collectively, was material to defendant's defense.

Of course, this evidence alone does not necessarily prove that Clark, rather than defendant, was the sole sexual abuser. However, the circuit court acknowledged there was other evidence at trial that would support a determination that the Clark investigation was material to defendant's case. For instance, Clark's undisputed access to the boys, the mother's belief that only Clark babysat the children, and evidence that defendant reportedly moved from the neighborhood before the abuse occurred, support an argument that Clark, rather than defendant, sexually abused the children, and thus, was material to defendant's case. Moreover, the trial court's findings of fact suggests the Clark allegations, if known, were material. The trial court stated it did not make sense that the two boys would fabricate sexual abuse and "pick [defendant] out of thin air as opposed to let's say, [Clark]." With evidence that Clark had sexually abused them and had threatened them to remain quiet, the trial court may very well have determined that defendant was not guilty. Therefore, the circuit court did not err when it found the statements to be material.

In all, the documentation from Clark's investigation was favorable to defendant, and there is a reasonable probability that a different outcome would result if the evidence was presented. With that said, we also note that AT and TT have both recanted their testimony, signed affidavits claiming Clark sexually abused them, and now proclaim that defendant never sexually abused them. While this new evidence is certainly favorable to defendant and material to this case, it is not evidence we may consider when determining whether defendant received a fair trial in 1989. However, even without this evidence, which the circuit court determined was highly suspect, we conclude that the circuit court's decision to grant defendant's third motion for

-9-

relief from judgment, vacate defendant's conviction and sentence, and grant a new trial was not outside the range of reasonable outcomes.

Affirmed.


/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron