# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY MAX LAWHEAD, JR.,

        Defendant-Appellant.

UNPUBLISHED
May 29, 2018

No. 338063
Calhoun Circuit Court
LC No. 2016-001394-FC

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct against an individual less than 13 years of age (CSC-I), MCL 750.520b(1)(a), and second-degree criminal sexual conduct against an individual less than 13 years of age (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant to concurrent sentences of 25 to 50 years' imprisonment for his CSC-I conviction and 38 months to 15 years for his CSC-II conviction. We affirm.

Defendant was a friend of the victim's parents and was at their home on numerous occasions for parties and social events throughout the years. In the summer of 2011 when the victim was 10 years old, during one of the parties that defendant attended at the home, defendant went inside the house and sat beside the victim on the couch and put his arm around her, placed his hand on her leg, and rubbed her knee area. He consoled her about her parents, who were having marital problems, and told her he was there for her. Defendant held the victim tightly close to him and rubbed her inner thigh, then moved his hand up almost to her waist. After a few minutes, he went back outside with the adults.

A few days later, during another party at the victim's home, defendant went inside and sat beside her on the couch where she watched television. Defendant put his arm around her, rubbed her inner thigh, and slid his had up and inside her shorts under her underwear and digitally penetrated her vagina. The victim asked defendant to stop, but defendant told her it would be okay. She tried to pull away from defendant but he pulled her closer. She eventually pulled away and ran to her bedroom where she locked the door. For the rest of the summer, if her parents had people over, she stayed in her bedroom with the door locked for fear that she would be sexually assaulted again. She did not reveal the incidents involving defendant until a few years later when her father and stepmother confronted her about behavioral problems. She

told them what defendant did to her, and they called Child Protective Services, who in turn referred the matter to the Calhoun County Sheriff's Office.

Before trial, the prosecution filed a notice that it intended to produce at trial other-acts evidence under MRE 404(b) and MCL 768.27a by eliciting testimony from defendant's daughter regarding sexual assaults defendant committed against her. Defendant objected to the admission of the evidence but the trial court ruled that the evidence would be allowed. On the first day of trial, the prosecution also moved to preclude defendant from bringing up or eliciting any testimony from witnesses protected under Michigan's rape-shield statute, MCL 750.520j. The prosecution specifically sought the preclusion of testimony regarding the fact that the victim made accusations against another individual with whom her mother had a relationship. The trial court ruled that the specific evidence would be excluded.

At the conclusion of the jury trial, defendant was found guilty of the charged offense, as indicted above. This appeal followed.

Defendant first argues on appeal that the trial court denied his constitutional right to confront the victim and denied his right to present a defense by not allowing him to cross-examine the victim regarding the sexual assault accusations she made against another individual. We disagree.

We review constitutional issues de novo. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003). We also review preliminary questions of law regarding the admissibility of evidence de novo. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). We review for an abuse of discretion a trial court's ultimate decision regarding the admissibility of evidence. *People v Taylor*, 252 Mich App 519, 521; 652 NW2d 526 (2002). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

Both the United States and Michigan Constitutions provide the accused the right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20; *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011). However, "[t]he right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant *issues*. It may bow to accommodate other legitimate interests in the criminal trial process, and other social interests." *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982) (citations omitted; emphasis in orignial).

Only relevant evidence is admissible. MRE 402. Under MRE 401, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence, however, is not always admissible. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." MRE 403. The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).

Michigan's rape-shield statute, MCL 750.520j, embodies the legislative policy that sexual conduct, as evidence of the victim's character and for impeachment, lacks legal relevance. *People v Morse*, 231 Mich App 424, 429-430; 586 NW2d 555 (1998). MCL 750.520j provides:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

The rape-shield statute excludes from admission at trial irrelevant "evidence of the victim's sexual conduct with persons other than defendant." *Arenda*, 416 Mich at 10. This Court has explained that the rape-shield statute provides only two narrow exceptions to the exclusion of " '*all* sexual activity by the complainant not incident to the alleged rape.' " *People v Duenaz*, 306 Mich App 85, 91; 854 NW2d 531 (2014) (citation omitted). Further, "inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury." *Arenda*, 416 Mich at 10. Evidence of a complainant's sexual history also "is usually irrelevant as impeachment evidence because it has no bearing on character for truthfulness." *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996), citing MRE 608. In *Duenaz*, this Court observed that "Michigan courts have applied the rape-shield statute in cases involving child victims." *Duenaz*, 306 Mich App at 92.

Occasionally, however, " 'such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation.' " *Adair*, 452 Mich at 484, quoting *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984). In *Hackett*, the Michigan Supreme Court explained:

By enacting a general exclusionary rule, the Legislature recognized that in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible. The first purpose is simply a variation of character evidence as circumstantial evidence of conduct.

The second is a collateral matter bearing only on general credibility as to which it has been held that cross-examination may be denied. The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past. [*Hackett*, 421 Mich at 347-349 (citations omitted).]

The Michigan Supreme Court, however, left the determination of the admissibility of such evidence "to the sound discretion of the trial court." *Id*. at 349. "In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id*. Further, the Court directed that:

The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted. Unless there is a sufficient showing of relevancy in the defendant's offer of proof, the trial court will deny the motion. If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence in light of the constitutional inquiry previously stated. At this hearing, the trial court has, as always, the responsibility to restrict the scope of cross-examination to prevent questions which would harass, annoy or humiliate sexual assault victims and to guard against mere fishing expeditions. Moreover, the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury. We again emphasize that in ruling on the admissibility of the proffered evidence, the trial court should rule against the admission of evidence of a complainant's prior sexual conduct with third persons unless that ruling would unduly infringe on the defendant's constitutional right to confrontation. [*Id*. at 350-351 (citations omitted).]

In *Morse*, 231 Mich App at 437, this Court considered what procedural safeguards were required to protect the interests of a young child and a defendant in a CSC case and held that

-4-

Michigan law dictates that an in-camera hearing is appropriate to determine whether: (1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainants, and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding.

In this case, before his trial started, defendant indicated his desire to confront the victim regarding allegations she made against a third person about a sexual assault that occurred more recently. The record reflects that defendant contended that the facts had relevancy to his theory of the case but failed to explain how confronting the victim about making allegations against another person on this separate and remote event served any theory of his defense. Defendant merely stated that he wanted to ask the victim whether she had made a sexual assault accusation against an individual who had been involved with her mother. Although defendant had every opportunity to proffer the evidence, seek an *in camera* review by the trial court, and explain fully to the trial court how such evidence might have had bearing on a fact in issue and supported his defense, he failed to do so. Defendant's contention on appeal that he had no opportunity to make an offer of proof and seek an in camera review lacks merit. The trial court gave defendant ample opportunity to explain the basis for confronting the victim and how such confrontation might help his case. Defendant, however, made no effort to establish how allegations of a sexual assault against another individual years after the incidents for which he had been charged had any relevance to his case. Defendant failed to meet his obligation to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which he sought its admission.

The evidence also clearly did not fit within the narrow exceptions to the rape-shield statute. The evidence could not establish that the minor victim consented to defendant's sexual conduct, nor could it establish the source of the victim's injury, pregnancy, or disease. Consequently, the evidence was inadmissible under MCL 750.520j. The trial court, therefore, correctly held that the proffered evidence ran afoul of the rape-shield statute because the evidence was neither of prior consensual sexual conduct between the victim and defendant, nor was it offered to establish the source of semen, pregnancy, or disease. MCL 750.520j(1)(a) and (b).

Further, we believe that evidence regarding the victim's allegation of sexual assault years later by a person other than defendant lacked relevance because such evidence was not material to any fact in question in this case. Defendant failed to establish that the victim's allegations against the other person had relevance to any of his defenses. Defendant never contended that the victim falsely accused the other person or that the allegation had any bearing on the victim's credibility. Defendant never argued that the fact of the allegations might establish the victim's bias, an ulterior motive for making a false charge against him, or any other basis for the contention that her allegation against another person had relevance to his case. *Hackett*, 421 Mich at 348; *Morse*, 231 Mich App at 436; *People v Williams*, 191 Mich App 269, 271-272; 477 NW2d 877 (1991). The record reflects that defendant's constitutional rights to present a defense and confront the witnesses against him were not violated. *Duenaz*, 306 Mich App 90-91. Accordingly, we conclude that the trial court did not abuse its discretion by denying the admission of the evidence of the victim's allegations of sexual assault by another person.

Defendant also argues that the trial court erred by allowing defendant's daughter to testify regarding other-acts evidence because his alleged behavior toward the two victims differed significantly and his daughter's testimony served only to inflame the jury's emotions and caused them to conclude that defendant had a propensity for sexually assaulting young girls. Defendant claims that his daughter's testimony was highly prejudicial and deprived him of a fair trial. We disagree.

We review for an abuse of discretion a trial court's decision to admit other-acts evidence under MRE 404(b). *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). We also review for an abuse of discretion a trial court's decision to admit other-acts evidence under MCL 768.27a. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

Other-acts evidence may be admitted under MRE 404(b) and MCL 768.27a. MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The Michigan Supreme Court has held that a trial court's admission of other-acts evidence was not an abuse of discretion if the trial court's decision met the three-part test articulated in *Huddleston v US*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988) that was adopted *in People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993). *People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). In *Sabin*, the Michigan Supreme Court stated the test as follows:

> First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. [*Id*. at 55-56 (citation and quotation marks omitted).]

*Sabin* also clarified that MRE 404(b) is a rule of inclusion and not exclusion, but when a trial court admits MRE 404(b) other-acts evidence, "the trial court upon request, may provide a limiting instruction under MRE 105." *Sabin*, 463 Mich at 56.

According to *Sabin*, "evidence of a defendant's similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id*. at 63 (citation omitted). There must be such a concurrence of common

features that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. *Id*. at 64-65.

The Michigan Supreme Court explained that "[g]eneral similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit acts." *Id*. at 64.

> To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.

> \* \* \*

> In the same manner, evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts. Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense." [*Sabin*, 463 Mich at 65-66, quoting *People v Ewoldt*, 7 Cal 4th 380, 403; 27 Cal Rptr 2d 646; 867 P2d 757 (1994).]

A high degree of similarity is required — more than is needed to prove intent, but less than is required to prove identity. *Id*. at 65-66. The acts must contain common features beyond mere commission of the acts but may be dissimilar in various respects. *Id.* at 66.

In *Sabin*, the Michigan Supreme Court found that the defendant's sexual assault of his stepdaughter shared sufficient features in common with the defendant's assault of his daughter to infer a plan, scheme, or system. *Id*. at 66. Beyond both being acts of sexual abuse, the victims were of similar age, both were in a father-daughter relationship with the defendant, and defendant allegedly played on their fear of breaking up the family to keep them silent. *Id*. The Michigan Supreme Court noted that, although the sexual abuse to the victims had differences that could cause reasonable persons to differ in their conclusions whether the charged act and the prior bad acts were sufficiently similar to infer the existence of a common system, plan, or scheme, there was no abuse of discretion if an evidentiary question was a close one. Therefore, it upheld the trial court's decision to admit the evidence. *Id*. at 67-68.

Further, MCL 768.27a(1) provides in relevant part that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In *Watkins*, 491 Mich at 455-456, the Michigan Supreme Court explained:

> We hold that MCL 768.27a irreconcilably conflicts with MRE 404(b), which bars the admission of other-acts evidence for the purpose of showing a defendant's propensity to commit similar acts, and that the statute prevails over the court rule because it does not impermissibly infringe on this Court's authority regarding

-7-

rules of practice and procedure under Const. 1963, art 6, § 5. We also hold that evidence admissible under MCL 768.27a remains subject to MRE 403, which provides that a court may exclude relevant evidence if the danger of unfair prejudice, among other considerations, outweighs the evidence's probative value. In applying the balancing test in MRE 403 to evidence admissible under MCL 768.27a, however, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect.

The Michigan Supreme Court clarified that MCL 768.27a allows admission of other-acts evidence to show a defendant's character and propensity to commit the charged crime despite MRE 404(b)'s preclusion of such evidence. *Id*. at 470-471. The Michigan Supreme Court concluded that MCL 768.27a constituted a valid enactment of substantive law that juries should be privy to a defendant's behavioral history in cases charging the defendant with sexual misconduct against a minor. *Id*. at 476. The Michigan Supreme Court recommended that when determining whether MRE 403 applied to exclude such evidence that trial courts consider, among other things, "(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony." *Id*. at 487-488.

In this case, the prosecution sought the introduction of defendant's daughter's testimony under MRE 404(b) and MCL 768.27a to establish defendant's lack of mistake, opportunity, intent, and common scheme or pattern of behavior. We conclude based upon the record that the evidence was admissible under both MRE 404(b) and MCL 768.27a.

Under the first prong of the *Huddleston* test, the prosecution offered the evidence for something other than for character or defendant's propensity to commit the offense. The prosecution's reasons clearly met the first prong of the test. The prosecution intended to use the evidence to show that defendant did not merely mistakenly act but intended to sexually assault the victim by using a scheme to groom the victim to trust him so that he could advance his plan to sexually assault her. Further, the prosecution sought the daughter's testimony to establish defendant's pattern of behavior to control his minor victims of approximately the same age while he sat on a couch and sexually abused them.

The prosecution's explanation also met the second prong of the *Huddleston* test because the evidence of other incidents of sexually assaulting a young girl under the age of 13 years old had relevance to facts of consequence to this case: defendant's plan, scheme, and pattern of behavior. Further, the other-acts evidence here had the requisite similarity required by *Sabin* for admission because the two incidents had a concurrence of common features. Defendant waited until the victims were alone and used his familiarity with them to gain their trust and silence. Regarding the third prong of the *Huddleston* test, the highly probative value of the daughter's testimony outweighed the risk of undue prejudice. Because the acts were substantially similar, the trial court did not abuse its discretion by admitting evidence of defendant's other acts under MRE 404(b).

Under MCL 768.27a, defendant's acts against his daughter were admissible to show his character and propensity to commit the charged crimes. The record reflects that the trial court considered the admissibility of the proposed evidence under MRE 403 and found that the evidence had relevancy for factual issues in the case and its probative value was not outweighed by unfair prejudice. The record reveals that the other acts defendant committed against his daughter were very similar to the charged crimes. The two victims were of similar age, and defendant initiated his sexual assaults in similar fashion on a couch by sitting next to them and holding them with one arm while he stroked their legs and inner thighs. He advanced his scheme by working up to touching their vaginas on the outside of their clothing. Later, he sat on the couches, held his victims tightly with one arm around them and touched their vaginas under their clothing. Defendant told each victim that his conduct was okay.

Although the record does not set forth exactly the temporal proximity between the sexual assaults of the two victims, we believe that one can reasonably infer from the multiple years over which defendant sexually assaulted his daughter that the time during which defendant sexually assaulted the victim in this case overlapped with his assaults of his daughter. The record also established that defendant took advantage of the absence of other adults to sexually assault each of his victims.

The record reflects that defendant did not challenge his daughter's credibility at trial. Nothing in the record suggests that her testimony lacked credibility or could not be relied upon to establish that the other acts occurred. Defendant's daughter's testimony had relevance to a variety of matters at issue, including defendant's intent, his propensity to commit criminal sexual conduct against very young minor girls, his opportunity to commit the crimes, his modus operandi, and his use of a common scheme, plan or system to commit criminal sexual conduct. His daughter's testimony also indirectly lent credibility to the victim's testimony in this case.

Although the evidence certainly was prejudicial to defendant, we conclude that the highly probative value of the evidence substantially outweighed such prejudice. We are not persuaded that the evidence caused unfair prejudice, confusion of the issues, or misled the jury. The trial court, therefore, did not abuse its discretion by permitting defendant's daughter's testimony under both MRE 404(b) and MCL 768.27a.

Affirmed.


/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra