*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ADRIAN RAMOS MARTINEZ,

Defendant-Appellant.

UNPUBLISHED
May 21, 2025
11:40 AM

No. 367954
Wayne Circuit Court
LC No. 22-003999-01-FH

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Following a suicide attempt, the complainant, "KFS," disclosed to a doctor at a psychiatric facility that she had been a victim of sexual abuse. As a result of the allegation, the prosecutor charged defendant, Adrian Ramos Martinez, with three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (sexual contact committed by a person 17 years of age or older against a victim under 13). Martinez appeals by right his jury-trial convictions of those offenses. We conclude that his claims of error involving the prosecutor's arguments, the sufficiency of the evidence, the great weight of the evidence, ineffective assistance of counsel, and the presentence investigation report lack merit. Accordingly, we affirm.

## I. FACTS

At the time that the sexual abuse occurred, Martinez was married to KFS's mother. The abuse began in the Fall of 2016 when KFS was nine years old and in the fourth grade and occurred when her mother was not home. The first incident began when Martinez asked her to come into his bedroom. He then touched her upper thighs and directed her to lie on top of him on his bed. She did so and faced him while on top of him. She was wearing a skirt at the time, and Martinez placed his hands on her buttocks underneath her skirt and underwear and moved them in an "up and down" motion. She was able to feel his erection on her pelvic area. Similar incidents occurred on at least four additional occasions. Martinez sometimes removed his pants during the incidents, but never removed his underwear.

The sexual abuse stopped in the Spring of 2017 after Martinez attempted to pull down KFS's pants shortly before her mother arrived home. When KFS heard her mother in the kitchen,

she ran into the kitchen and told her mother that Martinez tried to pull down her pants. Martinez denied doing so and he and KFS's mother became involved in a heated argument about the matter while KFS cried and did not say anything. KFS feared retaliation from Martinez if she did not recant her allegation, but she also feared that the incidents would continue to occur if she did so. She did not tell her mother at that time that Martinez had been sexually assaulting her for the previous several months.

In early 2020, KFS participated in therapy because of depression, but she did not tell her counselor about the sexual abuse. In the Fall of 2020, when she was 13 years old, she was hospitalized in an inpatient program following a suicide attempt. Inspired by an 11-year-old girl in the program who was forthcoming about sexual abuse that she had suffered, KFS told a doctor about Martinez's conduct. Thereafter, she told her mother about the abuse, and she and her mother went to the police station, where she told the police what had occurred.

Martinez's theory of defense at trial was that KFS and her mother fabricated the allegations to benefit KFS's mother in divorce proceedings against Martinez. The prosecution's case rested almost entirely on KFS's testimony. As noted, the jury convicted Martinez of all CSC-II charges.

## II. PROSECUTORIAL ERROR

Martinez first argues that the prosecutor improperly vouched for KFS's credibility during closing and rebuttal arguments. Because Martinez failed to object to the alleged instances of prosecutorial error, our review is limited to plain error affecting his substantial rights. See *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019). To establish error under the plain-error test, "a defendant must prove that (1) error occurred, (2) the error 'was plain, i.e., clear or obvious,' and (3) 'the plain error affected substantial rights.' " *People v Davis*, 509 Mich 52, 67; 983 NW2d 325 (2022), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects substantial rights if it " 'affected the outcome of the lower court proceedings.' " *People v Randolph,* 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *Carines*, 460 Mich at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (citation omitted).

We review claims of prosecutorial error case by case and examine the prosecutor's remarks in context. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks and citation omitted). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Although a prosecutor may not vouch for their witnesses' credibility or imply that they have special knowledge regarding a witness's truthfulness, they are free to argue that the evidence, and reasonable inferences arising from the evidence, supports a witness's credibility. *Isrow*, 339 Mich App at 529. Further, a prosecutor "may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence" and the outcome depends on which evidence the jury believes. *Id.* at 530 (quotation marks and citation omitted).

Martinez contends that the prosecutor's "entire closing" consisted of argument pertaining to why the jury should believe that KFS testified truthfully. However, such argument is not

improper. The prosecutor told the jury "there are some details that come [sic] in that, I think, demonstrate some of the ways in which [KFS] may be telling the truth." The prosecutor then recounted KFS's testimony concerning the argument between Martinez and her mother in the kitchen and KFS's fear of retaliation. The prosecutor argued that although KFS did not disclose the sexual abuse at that time, she disclosed it a few years later to a doctor at the psychiatric facility. The prosecutor suggested that KFS's disclosure to a medical professional rather than to anyone else, including her mother, tended to show that her testimony was truthful.

Martinez also takes issue with the following rhetorical question that the prosecutor asked during closing argument: "[H]ow can you help determine whether or not [KFS] was telling the truth?" The prosecutor then argued that KFS was believable because her mother's testimony corroborated her testimony and because KFS explained that she did not disclose the abuse because she felt disgusted with herself. The prosecutor also argued that KFS's behavior changed and she developed significant emotional problems that improved after she disclosed the abuse. Moreover, the prosecutor asserted that KFS did not have a motive to lie about the abuse. After defense counsel argued during closing argument that KFS and her mother conspired to fabricate the allegations and that neither witness's testimony was credible, the prosecutor again argued that KFS was worthy of belief and that the evidence failed to show that KFS's mother encouraged KFS to make the allegations.

Our review of the record demonstrates that the prosecutor did not vouch for KFS's credibility or imply that she had special knowledge concerning KFS's truthfulness. Rather, the prosecutor argued, on the basis of the evidence, that KFS was worthy of belief. Such argument is proper. *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008) ("A prosecutor may argue from the facts that a witness is credible . . . .") Because the prosecutor's arguments detailing why KFS was credible were not improper, no error occurred.[1]

## III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Martinez next argues that the evidence was insufficient to support his convictions. We review challenges to the sufficiency of the evidence de novo. *People v Osby*, 291 Mich App 412, 415; 804 NW2d 903 (2011). We "must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007) (quotation marks and citation omitted). We must resolve all evidentiary conflicts in the prosecution's favor. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). Further, "[c]ircumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *Id.*

---

[1] Martinez claims that his trial attorney rendered ineffective assistance of counsel by failing to object to the alleged instances of prosecutorial error. Because no error occurred, however, trial counsel's failure to object did not constitute ineffective assistance of counsel. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) ("counsel is not ineffective for failing to raise meritless or futile objections").

To establish CSC-II as charged in this case, the prosecutor was required to prove that Martinez engaged in sexual contact with KFS while she was under 13 years of age. See *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014). "Sexual contact" is defined as " 'the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that touching can reasonably be construed as being for the purpose of sexual arousal or gratification, or done for a sexual purpose.' " *Id*. at 106-107, quoting MCL 750.520a(q) (brackets omitted). " 'Intimate parts' includes 'the primary genital area, groin, inner thigh, buttock, or breast.' " *Id*. at 107, quoting MCL 750.520a(f).

The prosecutor presented sufficient evidence to support Martinez's convictions. KFS testified that Martinez began touching her inner thighs and buttocks when she was nine years old and in the fourth grade. She maintained that the incidents began in the Fall and occurred more than five times until they stopped in the Spring of the following year. She testified that, while Martinez touched her buttocks with his hands, he moved his hands in a "up and down" motion, and she could feel his erection against her pelvic area because she was lying on top of him and facing him. Thus, KFS's testimony was sufficient to establish the elements of CSC-II.

Martinez contends that the prosecutor failed to present evidence corroborating KFS's testimony. However, "[i]n criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated." *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016). Our Legislature enacted MCL 750.520h, which states, "The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." Accordingly, KFS's testimony alone was sufficient to support Martinez's convictions, and corroborating evidence was not required. Viewing the evidence in the light most favorable to the prosecution, we conclude that the prosecutor presented sufficient evidence to support Martinez's convictions.

Martinez also contends that his convictions contravene the great weight of the evidence. "To preserve a great-weight claim, a party must move for a new trial in the trial court." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Rather than raising his argument in a motion for a new trial in the trial court, Martinez raised his argument in a motion for judgment notwithstanding the verdict (JNOV) and requested that the trial court enter a judgment of acquittal. Although Martinez failed to file the proper motion or request the proper relief, we will review his claim of error as if properly preserved for our review. "We review for an abuse of discretion a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence." *Unger*, 278 Mich App at 232. A trial court abuses its discretion when its "decision falls outside the range of reasonable and principled outcomes." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018) (quotation marks and citation omitted).

A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *Unger*, 278 Mich App at 232 (quotation marks and citation omitted). Absent exceptional circumstances, issues involving witness credibility are for the jury to determine, and a trial court may not grant a new trial in cases involving conflicting testimony, even when testimony is

impeached to some extent. *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 6. Similarly, a trial court must defer to the jury's verdict unless directly contradictory testimony was impeached to the extent "that it was deprived of all probative value," or it "contradicted indisputable physical facts or defied physical realities." *Id.* (quotation marks and citation omitted). "The trial court may also override the jury's credibility determination when the testimony is patently incredible or it is so inherently implausible that it could not be believed by a reasonable juror . . . ." *Id.* (quotation marks and citation omitted).

Martinez argues that the verdict contravenes the great weight of the evidence because KFS testified that several instances of sexual abuse occurred under circumstances that defy logic. He also maintains that her testimony was uncorroborated, inherently implausible, and impeached by her inconsistencies and motivation to lie. The record belies Martinez's claims. Although some inconsistencies existed between KFS's and her mother's testimonies and between KFS's testimony and her statements to the police, the evidence was generally consistent that Martinez engaged in sexual contact with KFS on several occasions beginning in the Fall of 2016 when she was nine years old and ending in the Spring of 2017. KFS testified that Martinez engaged in the same general conduct with her on at least five occasions. While Martinez maintained that KFS and her mother fabricated the allegations and that KFS was not worthy of belief, "the resolution of credibility questions is within the exclusive province of the jury," *Lacalamita*, 286 Mich App at 470, and KFS's testimony was not inherently implausible. Further, as previously discussed, the prosecutor was not required to present third-party testimony or physical evidence corroborating KFS's testimony. MCL 750.520h; *Solloway*, 316 Mich App at 181. Therefore, we conclude that Martinez has failed to establish that the verdict contravened the great weight of the evidence.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief on appeal, Martinez raises several claims of ineffective assistance of counsel. Although he preserved his arguments for our review by raising them in a motion to remand for a *Ginther*[2] hearing filed in this Court, because we denied his motion, our review of Martinez's claims is limited to errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Whether a defendant has been denied the effective assistance of counsel at trial "is a mixed question of fact and constitutional law." *Id.* (quotation marks and citation omitted). We review the trial court's findings of fact, if any, for clear error and review questions of constitutional law de novo. *Id.*

To obtain a new trial based on ineffective assistance of counsel, a defendant must establish "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Martinez argues that defense counsel rendered ineffective assistance of counsel regarding the use of an interpreter during the trial court proceedings. He makes several assertions regarding the interpreter and his purported language barrier, including that he and his attorney could not communicate effectively, defense counsel failed to utilize the interpreter until sentencing, and he was unable to understand the terms of the plea agreement that the prosecutor offered months before trial. The record fails to support Martinez's assertions.

At a May 5, 2023 pretrial hearing, defense counsel confirmed Martinez's request to have an interpreter present during trial, although counsel told the court that he was confident that Martinez was able to understand what was being said. Counsel further stated, "I communicated with him all morning." On the first day of trial, the trial court swore an interpreter who affirmed under oath that she would "translate English to Spanish, and Spanish to English between the Court, the counsel and the witnesses . . . ." Thus, the record shows that Martinez and his attorney were able to communicate and that Martinez had the assistance of an interpreter during trial as requested. Therefore, Martinez has failed to meet his burden of establishing the factual predicate for his claims. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Regarding the plea offer, we note that the record indicates that an interpreter was present at the September 6, 2022 pretrial hearing at which the parties and the trial court discussed the plea offer. Defense counsel informed the court that he discussed the plea offer with Martinez and that Martinez rejected the plea, wishing instead to proceed to trial. The court asked Martinez if counsel's statement was accurate, and the interpreter delivered Martinez's response that counsel's representation was correct. Notably, during allocution at sentencing, the interpreter read a letter that Martinez had written in which he claimed to have misunderstood the plea offer and asked the court to give him another opportunity to talk to his attorney about the offer. The interpreter noted that Martinez's letter was written in English. Accordingly, the record fails to support Martinez's claims of ineffective assistance of counsel relative to a language barrier and the use of an interpreter.

Martinez next contends that trial counsel rendered ineffective assistance of counsel by failing to retain an expert witness in child psychology to testify about KFS's behavior around the time that she made the allegations. Martinez asserts that an expert could have explained psychological changes that occur during puberty, uncontrollable emotions that accompany the onset of the monthly menstrual cycle, and changes in physical appearance that may have explained KFS's preference for baggy and loose-fitting clothing. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). We note that the prosecution likewise did not call an expert to testify in this case. See *People v Ackley*, 497 Mich 381, 392; 870 NW2d 858 (2015) (defense counsel rendered ineffective assistance of counsel by failing to retain an expert to challenge the prosecutor's expert testimony). Moreover, it is unlikely that expert testimony regarding physical and psychological changes that occur during puberty would have made a difference in the outcome of trial. Martinez's defense theory was that KFS and her mother were lying as part of a conspiracy to benefit her mother in the divorce proceeding. During trial, defense counsel emphasized inconsistencies between KFS's and her mother's versions of events and inconsistencies in KFS's testimony. The expert testimony that Martinez claims his attorney was ineffective for failing to present would have added little to support his defense theory. Accordingly, Martinez has failed to show that counsel's alleged error was prejudicial.

Martinez next argues that his trial attorney failed to conduct a reasonable investigation regarding the reason for KFS's hospitalization in 2020, including obtaining her psychological and medical records. He asserts that a thorough investigation into the matter would have assisted counsel in impeaching KFS's testimony and that the psychological and medical records may have contained exculpatory information. Martinez fails to establish prejudice as a result of his attorney's alleged errors. Nothing indicates that KFS was hospitalized for a reason other than a suicide attempt, which was the reason discussed during trial. Moreover, Martinez failed to establish a reasonable probability that KFS's psychological and medical records contained exculpatory information. He therefore failed to overcome the physician-patient and psychologist-patient privileges that shield those records from disclosure.[3] See *People v Masi*, 346 Mich App 1, 24-25; 11 NW3d 521 (2023).

Next, Martinez contends that trial counsel was ineffective for failing to request that the trial court allow the jurors to ask questions of witnesses. MCR 2.513(I) provides as follows:

> The court may permit the jurors to ask questions of witnesses. If the court permits jurors to ask questions, it must employ a procedure that ensures that such questions are addressed to the witnesses by the court itself, that inappropriate questions are not asked, and that the parties have an opportunity outside the hearing of the jury to object to the questions. The court shall inform the jurors of the procedures to be followed for submitting questions to witnesses.

The record fails to indicate that Martinez preferred to allow juror-submitted questions during trial. Further, he fails to identify any prejudice resulting from the fact that the trial court did not give jurors the opportunity to submit questions, and the record does not reveal any such prejudice.

In sum, we find no merit in any of Martinez's claims alleging ineffective assistance of counsel.

## V. PRESENTENCE INVESTIGATION REPORT

Finally, Martinez argues in his Standard 4 brief that he is entitled to resentencing because his presentence investigation report (PSIR) contained information that was inconsistent with the record, which "potentially" resulted in a sentence based on inaccurate information. He refers specifically to the "Agent's Description of the Offense" in his PSIR, which indicates that the information contained in that section "was garnered from the River Rouge Police Investigator's Report dated 11/13/20." Martinez asserts that because police reports are inadmissible during trial, any information derived from the police report must be viewed as inaccurate and omitted from the

---

[3] Martinez also asserts that, at the end of the first day of trial, his attorney admitted that he was unprepared to discuss the admission of the video of KFS's forensic interview, which the prosecutor sought to admit. Martinez's argument fails to correspond with the record, which shows that the prosecutor intended to admit a video of Martinez's police interview rather than a video of KFS's forensic interview. In any event, because the prosecutor ultimately opted not to play the video at trial, Martinez's claim of error is unavailing.

PSIR. In addition, he maintains that the PSIR does not contain a statement from KFS under the heading "Victim's Impact Statement," and that, instead, that section contains a statement from KFS's mother, who was not a victim. He argues that the statement of KFS's mother must be removed from the PSIR in its entirety.

A PSIR must include, among other topics, "a complete description of the offense and the circumstances surrounding it," along with "a written victim's impact statement" if one is provided. MCR 6.425(A)(1)(b) and (g). Information in the PSIR is presumed accurate "unless the defendant raises an effective challenge." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). "When a defendant challenges the accuracy of the information, the defendant bears the burden of going forward with an effective challenge." *Id*.

Martinez has failed to establish that any error occurred. Although he asserts that the agent's description of the offense in the PSIR was inconsistent with the testimony to some extent, he fails to cite any authority in support of his apparent claim that the PSIR must be entirely consistent with the evidence adduced at trial. Moreover, the PSIR explicitly stated that the agent's description of the offense was derived from the police report. Because nothing indicates that the description of the offense in the PSIR failed to adhere to the police report, the PSIR was not inaccurate. In addition, considering that KFS was only 16 years old when she testified at trial, it was not erroneous for her mother to provide a statement regarding how the sexual abuse impacted KFS. The Crime Victim's Rights Act, MCL 780.751 *et seq*., specifically allows a victim's parent to provide a victim-impact statement on behalf of a minor child. See MCL 780.752(1)(m)(*v*)(C). Accordingly, Martinez has failed to establish that his PSIR is inaccurate, and he is not entitled to resentencing.

Affirmed.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett